**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 21, 2014**

# In the Court of Appeals of Georgia

A14A0928. KENEMER v. THE STATE.

BOGGS, Judge.

James Gregory Kenemer was convicted with a codefendant of possession of tools for the commission of a crime, theft by taking, and criminal trespass.[1] His motion for new trial was denied, and he files this out-of-time appeal, asserting as his sole enumeration of error the insufficiency of the evidence with respect to his conviction for possession of tools for the commission of a crime. We find the evidence sufficient and affirm.

In reviewing the sufficiency of the evidence,

---

[1] The jury found Kenemer not guilty of possession of a controlled substance and possession of a firearm while in possession of a controlled substance. The State nol prossed the charge of possession of a firearm by a convicted felon.

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

(Citations and footnote omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the evidence shows that around 2:30 a.m. on September 13, 2010, an employee of a hauling company called the police when he discovered two men in the act of taking metal from storage containers in the back yard of the business. The men removed the metal with the aid of flashlights and placed it in the back of a small red pickup truck. They left the scene before the police arrived, but were stopped a short distance away while still within sight of the employee. An officer with the Dalton Police Department testified that the driver, whom he identified as Kenemer, and his passenger were placed under arrest after a "felony traffic stop" based on the "theft-related call" from the witness. A search of Kenemer revealed a "wire cutter

2

type plier tool" in his pocket; on the passenger floorboard of the truck the police found another pair of wire cutters, a flashlight, a lantern which was "open and turned on," and a pair of work gloves with the name "Kenemer" on them. There was mud on the wire cutters, the seat, and the truck tires, and the gloves were "somewhat wet and damp . . . like they'd been used recently." The officer testified, based on his experience, that he had encountered gloves, wire cutters, and flashlights while investigating crimes in the past, that those items were primarily associated with property crimes as opposed to "person type crimes," and that they were consistent with the crime he was investigating in this case.

OCGA § 16-7-20 (a) provides: "A person commits the offense of possession of tools for the commission of crime when he has in his possession any tool, explosive, or other device commonly used in the commission of burglary, theft, or other crime with the intent to make use thereof in the commission of a crime." Kenemer was charged with possessing "gloves, lights, and cutting tools, devices commonly used in the commission of a crime, to wit: theft, with the intent to make use thereof in the commission of said crime."

Kenemer relies on several cases to contend that the tools he possessed were not shown to be "commonly used in the commission of a crime," but those decisions are

3

inapposite here. *Burnette v. State*, 168 Ga. App. 578, 580 (2) (b) (309 SE2d 875) (1983), contrary to Kenemer's assertion, was *not* decided on the issue of whether the household tools found in Burnette's truck were "commonly used." We expressly declined to rely on that point, and instead held that "assuming for the sake of argument that such tools are commonly used to commit burglaries, there is no evidence in the instant case to show that appellant possessed such tools with the *intent* to use them in the commission of a crime." (Emphasis supplied.) Id.[2] And the decision has been distinguished frequently on this second element of OCGA § 16-7-20, because "[i]n *Burnette*, the tools were rusty, no evidence was adduced that they had been used recently, and the . . . premises showed no sign of forcible entry." *Ranson v. State*, 198 Ga. App. 659, 660 (2) (402 SE2d 740) (1991) (full concurrence in Div. 2).

Here, as in *Ranson*, the tools were in the cab of the truck and they showed signs of recent use, "thereby indicating that the tools had been used to" commit the theft. 198 Ga. App. at 661 (2). See also *Anderson v. State*, 264 Ga. App. 362, 363-364 (1)

---

[2]The following statement in *Burnette* is mere dicta: "While it is true that such items could be used in the commission of a burglary, we are not prepared to hold that such tools are 'commonly used in the commission of burglary,' as required by § 16-7-20 (a)." Id. at 580 (2) (b).

4

(590 SE2d 729) (2003) (distinguishing *Burnette;* tools loose on floor of vehicle and appliance in house had been moved and opened to facilitate cutting of wires); *Manous v. State*, 205 Ga. App. 804, 805 (1) (423 SE2d 721) (1992) (same; glass cutter, lock picks, screwdriver and gloves connected with appellant and signs of forced entry); *Moore v. State*, 197 Ga. App. 9, 10 (1) (397 SE2d 477) (1990) (same; fresh scratches on doorframe although, officer also testified that screwdrivers "were popular for use in burglaries)). Alternatively, a showing of intent may be made by evidence, as here, that an individual was observed using one or more of the tools while committing the crime. See *Spradlin v. State*, 279 Ga. App. 638, 640-641 (2) (631 SE2d 828) (2006) (two men observed cutting security chain; bolt cutters found in front seat of truck occupied by appellant and a companion); *Jenkins v. State*, 259 Ga. App. 47, 51 (2) (a) (576 SE2d 300) (2002) (appellant carried flashlight during burglary).

Kenemer also specifically attacks the police officer's testimony in this case as inadequate to show "common" use. We take this opportunity to clarify an issue that has been tacitly acknowledged in the many cases construing OCGA § 16-7-20, but never directly addressed.

In the vast majority of cases construing this Code section, whether a tool is commonly used in the commission of a crime is "within the ken of the average juror."

5

*Norwood v. State*, 265 Ga. App. 862, 864-865 (2) (595 SE2d 537) (2004) (jury could determine from tools admitted into evidence whether they were "burglary tools"); cf. *Miller v. State*, 292 Ga. App. 641, 642-643 (2) (666 SE2d 35) (2008) ("whether or not a cut is consistent with having been made by a sharp instrument" within ken of jury.) In such cases, expert testimony is not required, and jurors are entitled to use their knowledge and experience to decide both elements set out in the Code section – common use and intent.

Of course, there are some cases in which this general rule does not apply. On the one hand, it is probable (although we need not decide the question here) that lockpicks, "slim jims," blackjacks, masks, and similar items are "commonly used" for the commission of crime as a matter of law. In fact, wire cutters and gloves have been explicitly held to "satisfy the first element [of the statute] as they are commonly used in the commission of burglary, theft, or other crimes. [Cits.]" *Kennon v. State*, 232 Ga. App. 494, 496 (3) (502 SE2d 330) (1998). On the other hand, some items are so specialized, *Nyane v. State*, 306 Ga. App. 591, 592 (1) (703 SE2d 53) (2010) (bulletproof vest), or so widely used in completely unrelated ways, *Garrett v. State*, 263 Ga. App. 310 (587 SE2d 794) (2003) (pieces of two-by-four lumber), that their

common use in crime – or even that they are "tools" or "devices" – is not within the ken of the average juror and expert testimony to that effect may be required.[3]

But this is not such a case. Here, it was well within the jury's ability to determine both whether the tools were "commonly" used in the commission of a crime, and whether Kenemer had the necessary intent to use them in that manner. Photographs of the items, separately and in their original locations in the truck, as well as some of the items themselves were admitted into evidence, and the jury could determine whether they were commonly used in crime. In *Norwood v. State*, supra, 265 Ga. App. at 864-865 (2), the defendant contended that the State failed to prove that bolt cutters found in a vehicle near his seat were a tool commonly used in crime, and that no evidence was presented that he possessed a crowbar or that the crowbar was used in the burglary at issue. We held that the bolt cutter was "entered into evidence and viewed by the jury. The evidence was sufficient for the jury to find that these items were burglary tools." (Citations and footnote omitted.) The evidence here is likewise sufficient.

---

[3]Kenemer also argues that the officer's testimony that, in his experience, the tools in question were used "primarily" in property crimes does not establish that the tools were "commonly" used in the commission of the crime at issue. But such parsing of language is not necessary where, as noted above, this question was within the knowledge of the average juror and expert testimony was unnecessary.

*Judgment affirmed. Barnes, P. J., and Branch, J., concur.*