# Court of Appeals
# of the State of Georgia

ATLANTA, June 05, 2017

*The Court of Appeals hereby passes the following order:*

**A16A1176 SUTTON v. THE STATE.**

Timothy Sutton filed a motion for this Court to recall the remittitur in the above-styled case, and we issued an order denying it on May 15, 2017. However, the remittitur had already been recalled before this Court issued that order. Given these circumstances, we VACATE this Court's May 15 order denying Sutton's motion to recall the remittitur, DENY the motion to recall the remittitur as MOOT, and DISMISS this appeal, which was reinstated on May 9, 2017. Furthermore, we advise that our original opinion affirming Sutton's conviction for possession of tools for the commission of a crime and its issuance date, September 28, 2016, are unaffected by this order.



*Court of Appeals of the State of Georgia*
*Clerk's Office, Atlanta, 06/05/2017*
*I certify that the above is a true extract from the minutes of the Court of Appeals of Georgia.*
*Witness my signature and the seal of said court hereto affixed the day and year last above written.*

_____, *Clerk.*

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 28, 2016**

# In the Court of Appeals of Georgia

A16A1176. SUTTON v. THE STATE.

DILLARD, Judge.

Timothy Sutton appeals his conviction for possession of tools for the commission of a crime, arguing that the evidence was insufficient to support his conviction, the trial court erred in failing to instruct the jury *sua sponte* on the elements of burglary, and his trial counsel was ineffective for failing to request such an instruction. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that on the evening of September 24, 2012, a deputy sheriff with the Candler County Sheriff's Office was on patrol, and at some point during his shift, he parked in a "dark area" to monitor the intersection of Georgia Highways 57 and 46. Around 10:30 p.m.,

---

[1] *See, e.g.*, *Hartzler v. State*, 332 Ga. App. 674, 675 (774 SE2d 738) (2015).

a vehicle approaching the intersection "caught [the officer's] attention" because, after stopping at the four-way stop, the car—which was "traveling on [h]ighway 46 coming from Metter, [Georgia]"—made "an extremely slow left turn" that was "so slow that it was very unusual." Based on his observations, the officer believed that there was a good chance that the vehicle's driver was impaired, and consequently, he began following the car. When the vehicle turned onto a residential street, the officer observed the driver turn into a driveway, back out, and drive back in the direction from which he came. The officer then observed the driver turn into a second driveway, back out, and again drive back toward the highway.

After the vehicle returned to Highway 57, the driver ran a stop sign, which prompted the officer to initiate a traffic stop. When the officer approached the vehicle, Sutton, who was driving the car, stated that he did not have a driver's license. Then, at some point during the traffic stop, the officer noticed that socks were pulled over the outsides of Sutton's shoes, which heightened the officer's suspicions. Indeed, based on his training and experience working on burglary cases, the officer knew that "people who commit burglaries will wear socks over their hands or feet to conceal their fingerprints . . . or footprints . . . ." Next, the officer looked into the backseat area of the vehicle, where he observed a pry bar, saws, a grinder, a

2

sledgehammer, work-style gloves, and a hat. The officer then inquired as to what Sutton was doing in the area, and he responded that he was "riding the area looking for some property that a relative owned." Ultimately, the officer arrested Sutton for driving without a license and transported him to jail.

During the transport, the officer heard "thumping around in the cage area of [his] vehicle," and upon arriving at the jail, the officer discovered that Sutton had removed his shoes and the socks covering them, even though he was handcuffed, and left them in the floorboard. The officer found this behavior "very unusual" because no other arrestee had ever removed his or her shoes during a transport in his 20 years of experience in law enforcement. At this point, based on everything the officer had witnessed, he arrested Sutton for possession of tools for the commission of a crime.

Later, during a custodial interview with the officer, Sutton explained that, on the night in question, he had traveled to Metter, Georgia, to eat at a fast-food restaurant, after which he planned to return to his father's residence in Excelsior, Georgia (which was on the opposite side of the county from where the traffic stop occurred near Aline, Georgia). Nevertheless, Sutton explained that he "mistakenly" turned toward Aline, where he stopped at a gas station to pour power-steering fluid into his vehicle just prior to the traffic stop. According to Sutton, he then planned to

3

drive toward Excelsior, but when he saw the patrol car, he turned onto a nearby residential street because he was driving without a license. And as to his behavior of turning into and backing out of private driveways, Sutton told the officer that he did so in hopes that, if he were stopped by police, he could "save on the tow bill by being in a residence."

Ultimately, Sutton was charged, via indictment, with one count of possession of tools for the commission of a crime. And following a jury trial, he was convicted of the charged offense. Sutton then filed a motion for a new trial, but waived a formal hearing on the motion because it was "based almost purely upon the law" and did not require the presentation of any additional evidence. After considering the briefs submitted by the parties, the trial court denied Sutton's motion for a new trial. This appeal follows.

1. Sutton first argues that the evidence was insufficient to support his conviction for possession of tools for the commission of a crime. We disagree.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed "in the light most favorable to the verdict, and the appellant no longer

enjoys a presumption of innocence."[2] And, of course, in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[3] Thus, we will uphold a jury's verdict so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4] Bearing these guiding principles in mind, we turn now to Sutton's specific challenge to the sufficiency of the evidence to support his conviction.

Under OCGA § 16-7-20 (a), "[a] person commits the offense of possession of tools for the commission of [a] crime when he has in his possession any tool, explosive, or other device commonly used in the commission of burglary, theft, or other crime with the intent to make use thereof in the commission of a crime." And here, the indictment charged Sutton

> with the offense of POSSESSION OF TOOLS FOR THE COMMISSION OF [A] CRIME (O.C.G.A. [§] 16-7-20) for that the said

---

[2] *Id.* at 676 (1) (punctuation omitted); *see Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[3] *Hartzler*, 332 Ga. App. at 676 (1) (punctuation omitted).

[4] *Id.* (punctuation omitted).

5

accused . . . on September 24, 2012, in [Candler County,] did then and there unlawfully have in his possession tools, to wit: pry bars, saws, grinder, sledge hammer, along with gloves and dark knit hat, which [are] commonly used in the commission of burglary, with the intent to use said items in the commission of a crime, contrary to the laws of the state of Georgia, the good order, peace and dignity thereof.

On appeal, Sutton claims that while the evidence presented, including his two previous convictions for burglary-related crimes, detailed *infra*, "arguably rais[es] a suspicion of guilt," it was insufficient to support his conviction. Specifically, Sutton contends that his conviction for possession of tools for the commission of a crime was unsupported because (1) although pictures of the tools in his possession were shown to the jury, the tools themselves were not submitted as evidence such that the jury could evaluate whether they showed signs of recent use and whether they had actually been used in the commission of a crime; and (2) the State presented no evidence that he committed a burglary prior to his encounter with the patrol officer.[5]

---

[5] We note that Sutton also summarily asserts, without further explanation or citation to authority, that his conviction is unsupported because the State presented no evidence that the tools in his possession were even capable of being used in the commission of a crime. However, in the vast majority of cases construing OCGA § 16-7-20, "whether a tool is commonly used in the commission of a crime is within the ken of the average juror." *Kenemer v. State*, 329 Ga. App. 330, 333 (765 SE2d 21) (2014) (punctuation omitted); *see also Norwood v. State*, 265 Ga. App. 862, 864-65

6

Sutton is indeed correct that, in the majority of cases in which this Court has upheld convictions for possession of tools for the commission of a crime, there was at least some evidence that the tools were actually used in some specific crime or attempted crime.[6] But although such evidence *may* support a conviction for

(2) (595 SE2d 537) (2004) (holding that the jury could determine from the tools admitted into evidence whether they were "burglary tools"), *disapproved of on other grounds by Harris v. State*, 286 Ga. 245 (686 SE2d 777) (2009). Thus, expert testimony on this issue is not required, and "jurors are entitled to use their knowledge and experience to decide both elements set out in the Code section—common use and intent." *Kenemer*, 329 Ga. App. at 333. Furthermore, we have expressly held that at least some of the tools in Sutton's possession, such as the sledgehammer and gloves, are items commonly used in the commission of burglary. *See Kennon v. State*, 232 Ga. App. 494, 496 (3) (502 SE2d 330) (1998). And as to the other items that Sutton was charged with possessing (*i.e.*, pry bars, saws, a grinder, and dark knit hat), the jurors were entitled to use their own knowledge and experience to determine whether those items can be considered "burglary tools." *See Kenemer*, 329 Ga. App. at 333. Thus, to the extent that Sutton has adequately briefed this argument on appeal, we conclude that it is meritless.

[6] *See, e.g.*, *Walker v. State*, 281 Ga. App. 94, 100 (6) (635 SE2d 577) (2006) (holding that the evidence was sufficient to support a conviction for possession of tools for the commission of a crime when, *inter alia*, the defendant was present at the scene where cars were broken into with the kind of tools that the defendant possessed and stolen items were found in his vehicle); *Manous v. State*, 205 Ga. App. 804, 805 (1) (423 SE2d 721) (1992) (holding that there was sufficient evidence to support a conviction for possession of tools for the commission of a crime when, *inter alia*, the defendant had been seen walking in close proximity to a restaurant that had been "forcibly entered" and a glass cutter and lock picks were found in his car, which was parked near the restaurant); *Ranson v. State*, 198 Ga. App. 659, 660-61 (2) (402 SE2d 740) (1991) (affirming a conviction for possession of tools for the commission of a crime when, *inter alia*, the broken glass found in the defendant's tool bag indicated

7

possession of tools for the commission of a crime, Sutton has provided us with no legal authority—and there is none that we can find—suggesting that evidence of recent use of the tools in a particular crime or attempted crime is *necessary* to support a conviction under OCGA § 16-7-20 (a). This is because the plain language of the statute itself requires only that the defendant possess the relevant tools *with the intent* to use them in the commission of a crime, not that the tools must have already been used to commit a particular crime.[7]

And here, there was evidence that the arresting officer observed Sutton driving in a suspicious manner when he made an unusually slow turn at a four-way stop and

---

that the tools had been used to break into a truck that had a broken window); *Moore v. State*, 197 Ga. App. 9, 9-10 (1) (397 SE2d 477) (1990) (affirming a conviction for possession of tools for the commission of a crime when, *inter alia*, there was evidence that screwdrivers, such as those in the defendant's possession, were "popular for use in burglaries" and that there were "fresh scratches" on a door frame that a homeowner had seen the defendant attempting to "pry open").

[7] *See* OCGA § 16-7-20 (a) ("A person commits the offense of possession of tools for the commission of [a] crime when he has in his possession any tool, explosive, or other device commonly used in the commission of burglary, theft, or other crime *with the intent* to make use thereof in the commission of a crime." (emphasis supplied)); *Kennon*, 232 Ga. App. at 496 (3) (noting—in a case in which there was no evidence that the alleged burglary tools had been used to commit a crime—that the element of intent in OCGA § 16-7-20 (a) "is a question of fact for jury resolution" and "may be proven by circumstantial evidence, by conduct, demeanor, motive, and all other circumstances").

8

when he pulled into and backed out of driveways on a residential street before driving back in the same direction from which he came. In fact, the officer was so concerned by Sutton's odd behavior that he initially assumed Sutton was an impaired driver. Further, in addition to the numerous tools found in the backseat of Sutton's vehicle, he had socks pulled *over* his shoes, which the officer testified is sometimes done during burglaries to avoid leaving footprints. Sutton also removed those shoes and socks while still in handcuffs, which the officer had never seen an arrestee do before. In addition to this odd and suspicious behavior, Sutton lied to the patrol officer about why he was driving around the Aline area. Indeed, during the traffic stop, Sutton claimed that he was "riding the area looking for some property that a relative owned." But later, in his official statement to law enforcement, he contended that he inadvertently arrived in Aline after "mistakenly" taking a wrong turn away from his intended destination, which was on the opposite side of the county.

Additionally, the jury heard evidence that Sutton had been involved in two prior burglaries. Specifically, in November 2003, the same arresting officer in this case investigated a burglary in which numerous items, including lottery tickets, a firearm, and a bank bag, were stolen from a gas station that was across the street from the one where Sutton stopped just prior the traffic stop. Based on the investigation

that ensued, Sutton was identified as a person of interest, and a search warrant was issued for his home. During that search, law-enforcement officers discovered various items connected to the crime, and ultimately, Sutton pleaded guilty to burglary.

The State also presented evidence that in 2010, roughly two years before Sutton's instant arrest, a detective and patrol officer with the Savannah Chatham Metropolitan Police Department were dispatched to a restaurant at approximately 2:00 a.m. when the restaurant's alarm sounded. While clearing the area, the officer observed someone through a hole in the ceiling, but the person jumped off of the roof when the officer began yelling at him. Shortly thereafter, Sutton was discovered hiding nearby with both of his ankles broken, and a duffle bag containing tools was also found in the area. Although the officer could not remember the exact number of tools in Sutton's possession, she knew that he had a crow bar, a bandana, gloves, and, as in this case, an extra pair of socks. Other officers also seized various items from the bag, including two crowbars, black gloves, a cell phone, cigarettes, a scanner flashlight, a blue bandana, and a steak knife. Initially, Sutton was charged with burglary, possession of tools for the commission of a crime, and obstruction. However, he was ultimately only convicted of criminal trespass (a lesser-included offense), and possession of tools for the commission of a crime.

10

Despite the foregoing evidence, Sutton argues that our decision in *Burnette v. State*,[8] which he acknowledges has been "restricted" or distinguished by many subsequent cases,[9] requires the State to present evidence that the alleged burglary tools "were in such a condition that they could be used in the commission of a crime." However, this Court made no such pronouncement in *Burnette*. Instead, in *Burdnette*, we noted the fact that the "tools were rusty and there was no indication that they had been recently used" was merely a factor to be considered in determining whether, under the particular facts and circumstances of that case, the evidence was insufficient to support the defendant's conviction for possession of tools for the commission of a crime.[10] Regardless, *Burnette* is factually distinguishable from the instant case in significant respects.

---

[8] 168 Ga. App. 578 (309 SE2d 875) (1983).

[9] *See, e.g.*, *Kenemer*, 329 Ga. App. at 333 (noting that *Burnette* "has been distinguished frequently on th[e] [intent] element of OCGA § 16-7-20 . . ."); *Anderson v. State*, 264 Ga. App. 362, 364 (1) (590 SE2d 729) (2003) (noting that *Burnette* was factually distinguishable from the case at issue); *Manous*, 205 Ga. App. at 805 (1) (same); *Ranson*, 198 Ga. App. at 660-61 (2) (same); *Moore*, 197 Ga. App. at 9-10 (1) (same).

[10] *See Burnette*, 168 Ga. App. at 580 (2) (b).

11

Specifically, unlike this case, the defendant in *Burnette* was found in possession of the relevant tools and apprehended *after a report that he may have burglarized a specific residence.*[11] And in holding that the evidence was insufficient to support the defendant's conviction in *Burnette*, we relied on evidence that there were no pry marks or gouges on the window or doors of the [ ] house to indicate there had been a forcible entry" and that "the sill of the window found open was covered with dust which was undisturbed."[12] But here, as Sutton emphasizes on appeal, his possession of the alleged burglary tools, as presented to the jury, was not connected or related to a specific burglary, such that this Court can even consider evidence that the alleged burglary tools were or were not used in any particular burglary. Thus, *Burnette*'s holding was based on the particular facts and circumstances of that case, which, unlike this one, involved allegations that the tools had been recently used in a specific burglary, and we did not mandate that the State, in every case, must present any particular type of evidence regarding the condition of the alleged burglary tools.

In sum, the circumstantial evidence—including Sutton's suspicious and unusual behavior prior to the traffic stop, the fact that he was wearing socks *over* his

---

[11] *See id.* at 578-79.

[12] *Id at* 580 (2) (b).

shoes and inexplicably removed his shoes and the extra socks while handcuffed during his transport to jail, his contradictory statements to police as to why he was in the Aline area, his 2003 conviction for a burglary that occurred in the exact same area of the traffic stop, and his 2010 conviction for the same offense charged here in which he possessed some of the same alleged burglary tools he possessed in this case—is sufficient, along with the tools found in his possession, to support Sutton's conviction.[13]

2. Sutton next argues that the trial court plainly erred by failing to charge the jury on the elements of burglary when the indictment specifically charged him with

---

[13] *See Kennon*, 232 Ga. App. at 496 (3) (holding that there was sufficient evidence to support a conviction for possession of tools for the commission of a crime when the evidence showed that, late at night, the defendant positioned his vehicle behind a closed business and immediately moved upon noticing the police; his stolen pick-up truck contained numerous tools commonly used in the commission of burglary; and his presence behind a closed business in possession of the tools was unexplained); *see also Bryant v. State*, 320 Ga. App. 838, 840-41 (2) (740 SE2d 772) (2013) (affirming a conviction for possession of tools for the commission of a crime when the defendant possessed items consistent with drug distribution, and noting that "[i]ntent is a question of fact for jury resolution and may be proven by circumstantial evidence, by conduct, demeanor, motive, and all other circumstances" (punctuation omitted)); *Evans v. State*, 216 Ga. App. 21, 23-24 (2) (453 SE2d 100) (1995) (holding that the discovery of a screwdriver in a co-defendant's coat and the misleading statements of the co-defendants regarding how long they had been in certain parking lots coupled with their prior suspicious activity was sufficient probable cause to support their arrests for possession of tools for the commission of a crime).

13

possession of tools commonly used in the commission of burglary. Again, we disagree.

At the outset, we note that, as conceded by Sutton, he neither requested a jury charge on the elements of burglary, nor objected to the trial court's failure to give such a charge. Nevertheless, under our Supreme Court's construction of OCGA § 17-8-58,[14] "we review for plain error an alleged error in jury instructions properly enumerated and argued on appeal that was not raised by trial counsel before the jury retired to deliberate."[15] And under plain-error review, reversal of a conviction is authorized "if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affected the

[14] OCGA § 17-8-58 (b) ("Failure to object [to any portion of a jury charge or a failure to charge the jury] in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the [trial] court's attention as provided in subsection (a) of this Code section.").

[15] *Smith v. State*, 292 Ga. 316, 319 (3) (737 SE2d 677) (2013).

14

fairness, integrity or public reputation of judicial proceedings."[16] Finally, we note that "[s]atisfying all four prongs of this standard is difficult, as it should be."[17]

As to the first prong of the plain-error analysis, Sutton argues that the trial court was required to "explain the elements of each offense at issue" to the jury, and its failure to do so is reversible error. He further contends that when "certain legal offenses" are elements of the charged crime, a trial court errs in failing to provide the jury with legal definitions of the "elemental crimes." In support of this argument, he refers us to cases in which the trial court failed to charge the jury on the legal definition of a crime that was a "material element" of the charged offense.[18] But his reliance on those cases is misplaced because we have expressly held "that possession of burglary tools and burglary are separate and distinct offenses and conviction of one

---

[16] *Id.*; *accord Lake v. State*, 293 Ga. 56, 59 (5) (743 SE2d 414) (2013).

[17] *Lake*, 293 Ga. at 59 (5).

[18] *See Essuon v. State*, 286 Ga. App. 869, 869, 872 (2) (650 SE2d 409) (2007) (holding that the trial court committed reversible error when it failed to charge the jury on the legal elements of "felony" and "murder" when both were elements of the charged offense—criminal solicitation to commit a felony—and murder was the underlying felony); *Moore v. State*, 235 Ga. App. 175, 175-76 (509 SE2d 108) (1998) (holding that the trial court committed reversible error in failing to instruct the jury on the elements of rape when rape was an essential element of the charged offenses—burglary with intent to rape and aggravated assault with intent to rape).

15

is *not an essential part* of conviction of the other."[19] Indeed, as previously discussed, a conviction for possession of tools for the commission of a crime—in this case burglary—requires only the possession of tools with the *intent* to use them to commit burglary, not that a burglary must actually occur.[20] Moreover, as also previously mentioned, "[i]n the vast majority of cases construing [OCGA § 16-7-20], whether a tool is commonly used in the commission of [burglary, theft, or another crime] is within the ken of the average juror," and therefore, jurors may make such a determination based on their own personal knowledge and experience.[21] Because the

---

[19] *Butler v. State*, 130 Ga. App. 469, 477 (5) (203 SE2d 558) (1973) (emphasis supplied); *see also Smith v. Ault*, 230 Ga. 433, 433 (1) (197 SE2d 348) (1973); *Shelly v. State*, 107 Ga. App. 736, 737 (1) (131 SE2d 135) (1963).

[20] *See supra* note 7 & accompanying text.

[21] *See supra* note 5. It is worth noting that, here, there was evidence that Sutton had two prior convictions related to burglaries that involved him entering into businesses in an apparent attempt to commit theft. Presumably, this evidence was helpful to the jury in establishing that, generally, the offense of burglary involves a person entering someone else's property without permission with the intent to commit theft. *See* OCGA § 16-7-1 (b) ("A person commits the offense of burglary in the first degree when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied, unoccupied, or vacant dwelling house of another or any building, vehicle, railroad car, watercraft, aircraft, or other such structure designed for use as the dwelling of another."). But, as discussed *supra*, even without such evidence, jurors are permitted to make a determination of whether particular tools are commonly used to commit burglary based on their own knowledge and experience.

16

trial court's failure to instruct the jury on the elements of burglary was not error, much less a "clear and obvious" one, Sutton has failed to meet his burden of satisfying the first and second prongs of the plain-error analysis.[22]

3. Finally, Sutton argues that his attorney rendered ineffective assistance by not objecting to the trial court's failure to charge the jury on the elements of burglary and by not requesting such an instruction. Yet again, we disagree.

We first note that in evaluating claims of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington.*[23] Under this test, the appellant first must show that counsel's performance was deficient and, second, that he was prejudiced by counsel's deficient performance.[24] Moreover, there is a "strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel

---

[22] *See Hughley v. State*, 330 Ga. App. 786, 789 (2) (769 SE2d 537) (2015) (holding that the defendant failed to demonstrate plain error in the trial court's failure to give a certain jury charge when he "failed to show a 'clear or obvious' error in the trial court's charge"); *Fleming v. State*, 324 Ga. App. 481, 484 (1) (749 SE2d 54) (2013) (holding that the trial court "did not err, much less plainly err" in failing to give an unwarranted jury charge).

[23] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984); *see also Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[24] *Ashmid*, 316 Ga. App. at 556 (3); *see also Strickland*, 466 U.S. at 687 (III).

17

might be considered sound trial strategy."[25] And lastly, we note that because Sutton waived a hearing on his ineffective-assistance-of-counsel claim and his trial counsel did not testify, counsel's decisions are presumed to be strategic, and Sutton must show that "the presumed strategy was so unsound that no reasonable lawyer would have adopted it to show deficient performance."[26] As acknowledged by our Supreme Court, "[t]hat is an unusually heavy burden to carry,"[27] and when trial counsel does not testify, "[i]t is extremely difficult to overcome the presumption of reasonable professional assistance . . . ."[28] With these guiding principles in mind, we turn now to Sutton's specific claim.

With respect to his trial counsel's failure to request a jury charge on the elements of burglary or to object to the court's failure to give such an instruction, Sutton first argues that, "[t]o the extent that trial counsel's inaction somehow prevented the trial court from taking corrective action, and waived the matter for

---

[25] *Ashmid*, 316 Ga. App. at 556 (3) (punctuation omitted); *see also Strickland*, 466 U.S. at 689 (III) (A).

[26] *Butler v. State*, 292 Ga. 400, 405 (3) n.8 (738 SE2d 74) (2013).

[27] *Id.*

[28] *Id.* (punctuation omitted); *quoting Maxwell v. State*, 290 Ga. 574, 575 (2) (722 SE2d 763) (2012).

appellate review, [ ] counsel acted deficiently." But, as explained in Division 2 *supra*, the trial court *did not err* in failing to charge the jury on the elements of burglary because burglary is not an essential element of Sutton's charged offense. Thus, any objection to the trial court's failure to give such a jury charge on that basis would have been meritless, and of course, "counsel's failure to make a meritless objection cannot constitute evidence of ineffective assistance."[29]

For all of the foregoing reasons, we affirm Sutton's conviction.

*Judgment affirmed. Phipps, P. J., and Peterson, J., concur.*

---

[29] *Porter v. State*, 292 Ga. 292, 294 (3) (a) (736 SE2d 409) (2013); *accord Humphrey v. Lewis*, 291 Ga. 202, 214 (V) (A) (ii) (728 SE2d 603) (2012).