**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 10, 2022**

# In the Court of Appeals of Georgia

A22A0120. KELLY v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Giacobi Trevell Kelly guilty of burglary, possession of tools for the commission of a crime, and obstruction of an officer. He appeals from his judgment of conviction and sentence, arguing that the trial court erred by (1) failing to thoroughly engage in an appropriate colloquy prior to allowing Kelly to represent himself; (2) depriving Kelly of his right to communicate with stand-by counsel; (3) improperly commenting on Kelly's failure to appear on the second day of trial; (4) depriving Kelly of his right to present evidence; (5) interfering with Kelly's cross-examination of law enforcement officers; and (6) allowing the State to present evidence of a prior burglary committed by Kelly. Kelly also contends that he received

ineffective assistance of counsel during trial,[1] that the evidence was insufficient for the jury to find him guilty of burglary or possession of tools for the commission of a crime, and that the cumulative effect of the errors committed during his trial denied him the right to a fair trial. For the reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the evidence shows that around 3:30 a.m. on January 2, 2014, a 911 dispatcher received a call about an alarm going off at a gas station in Covington. A detective who responded to that location observed that the back wall of the building, which was made of cinder block, had a large hole in it. There was also a dolly with a safe on it outside of the building. When the detective entered the store, he observed that it was in disarray, with many wires hanging down, and it appeared that someone had rummaged through the office. Wires to the alarm system had been cut. Scrape marks on the floor left a trail where the safe had been dragged on the dolly from its location near the cash register. The open cash register contained change but no bills. One of the owners of the store

---

[1] Kelly represented himself during opening arguments and the questioning of three of the State's witnesses. His trial counsel then resumed representation.

[2] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

2

estimated that $3,000-$4,000 was missing. He also testified that a CPU containing surveillance video had been taken.

A police officer dispatched to the scene went to a wooded lot behind the gas station less than a minute after receiving the dispatch, turned off his headlights, and monitored the area for any unusual activity. The officer testified that a path led from the gas station to Old Brown Bridge Road. According to the officer, the businesses in the area were closed, and there was no traffic. The officer soon saw an older model tan Suburban exit Old Brown Bridge Road onto Washington Street. The officer followed the vehicle and called in the tag information. The vehicle was registered to Fredrick White, whose address was in Atlanta. The officer could see that there were at least four or five people in the car. As the officer followed the vehicle, he saw an object being thrown from the driver's side window, and he logged his observation with dispatch. The officer requested assistance, and, after he saw a sheriff's deputy following him, activated his emergency equipment to conduct a traffic stop on the vehicle.

The uniformed officer, who was in a marked patrol vehicle when he conducted the traffic stop, gave loud verbal commands for the driver to turn the car off and throw the keys out of the window. Instead, the driver fled with the vehicle. The

officer returned to his car, and, after a brief pursuit, the vehicle hit a fence and came to a stop. Six people jumped out of the vehicle and started running. Law enforcement officers surrounded the area and began searching for the individuals who ran from the vehicle. Police located three men, who were all wearing dark clothing: (1) Kelly, who was found lying face down trying to hide in bamboo in the back yard of a house near the vehicle; (2) Kenny Wells; and (3) Derrick Stephens. Kelly was carrying three $100 bills, thirty-eight $20 bills, nine $5 bills, and twenty-seven $1 bills, as well as a cell phone and wire cutters. A "large amount of US currency" also was found on Stephens.

Stephens, who pled guilty to burglary of the gas station, testified at Kelly's trial. According to Stephens, Wells called Stephens and asked if he wanted to make some money. Wells picked Stephens up in a Suburban, with another man driving. They traveled to the gas station, and the vehicle stopped in the back of the building. When they arrived, Stephens saw seven or eight people wearing masks, and there was a hole in the back wall of the building. Stephens entered the store through the hole, located a money pouch, and ran back to the Suburban. Other people who were inside the building with Stephens ran to the Suburban with him, and they all got in the vehicle. They drove away from the gas station, but were soon followed by a police

4

officer. The officer tried to pull them over, but the driver led police on a high-speed chase. Stephens and the others in the vehicle eventually jumped out to try to escape.

A warrant was obtained to search the Suburban, and officers located crowbars, a power cut-off saw and spare blade, a sledgehammer, a drill, pry bars, bolt cutters, screwdrivers and other hand tools, three hats or masks that could be pulled down over a face, three pairs of gloves, and two single gloves. A glove matching one of the single gloves was found on the same road that the officer who followed the Suburban had been on when he saw an object thrown from the vehicle. Fredrick White, the owner of the Suburban, could not be located, and the vehicle was never picked up or reported stolen.

Kelly was charged with burglary in the second degree (OCGA § 16-7-1 (c)), possession of tools for the commission of a crime (OCGA § 16-7-20 (a)), and obstruction of an officer (OCGA § 16-10-24 (a)).

At Kelly's trial, in addition to presenting the evidence summarized above, the State introduced evidence of a 2011 burglary committed by Kelly. A deputy sheriff testified that in September 2011, he responded to a report of a burglary at Milano's Fine Jewelry. A construction crew working on a suite next to that establishment discovered a hole in the wall of the jewelry store. When the deputy entered the

building, he observed several holes in the walls of the jewelry store. After additional officers arrived, they found pry marks on the rear door of the jewelry store. There were smashed display cases in the jewelry store, and it "was obvious it had been ransacked." In a field behind the building, officers recovered several pieces of jewelry. Officers identified Kelly as a suspect based on phone records and interviews with other suspects, including Fred White, who ran a pawn shop, and Eric Stephens, who is the brother of Derrick Stephens. Kelly eventually pled guilty to burglarizing the jewelry store, and a certified copy of his conviction was admitted into evidence.

The jury found Kelly guilty on all charges relating to the 2014 gas station burglary on February 23, 2018. However, because Kelly failed to appear for the last day of trial, a sentencing hearing was not held until May 25, 2021, after Kelly had been re-arrested. Kelly was sentenced to a total of eleven years in confinement as a recidivist under OCGA § 17-10-7 (a) and (c). This appeal followed.

1. Kelly contends that the trial court erred by failing to conduct an appropriate colloquy prior to allowing Kelly to represent himself and failing to make a finding as to whether he knowingly and voluntarily waived his right to counsel. We disagree.

A criminal defendant has "a fundamental right to represent himself in a state criminal trial when he voluntarily and intelligently elects to do so." *Clarke v. Zant*,

247 Ga. 194, 195 (275 SE2d 49) (1981) (citation and punctuation omitted). "Under *Faretta* [*v. California*, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562) (1975),] the trial court must apprise the defendant of the dangers and disadvantages inherent in representing himself so that the record will establish that he knows what he is doing and his choice is made with eyes open." *State v. Evans*, 285 Ga. 67, 68 (673 SE2d 243) (2009) (citation and punctuation omitted). "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case including the background, experience, and conduct of the accused." *McDaniel v. State*, 327 Ga. App. 673, 674 (1) (761 SE2d 82) (2014) (citation and punctuation omitted). On appeal, the State bears the burden of showing that a defendant "received sufficient information and guidance from the trial court to make a knowing and intelligent waiver of the right to trial counsel[.]" *Renfro v. State*, 348 Ga. App. 615, 617 (2) (824 SE2d 75) (2019) (citation and punctuation omitted). We review the trial court's ruling on this issue for an abuse of discretion. Id.

The record shows that on the morning of the first day of trial, Kelly informed the trial court that he wanted to represent himself. On the record, in Kelly's presence, the trial court elicited from defense counsel the amount of time Kelly was facing if

7

found guilty. In response to questions from the trial court, Kelly stated that he graduated from college and understood his rights. The court gave Kelly extensive warnings about the danger of waiving representation by counsel. The court compared waiving representation to foregoing anesthesia in order to direct one's own surgery. Kelly was warned that he would have to cross-examine witnesses although he did not "know techniques of cross-examination that [trial counsel]'s been trained in." He was also warned that he would not know what points "might resonate with a jury" as his trial counsel would. Kelly told the trial court that he had been adequately warned by the court of the danger of conducting his own defense and still wanted to go forward even after the warnings. Kelly requested, and was allowed, to have his attorney remain as counsel to select a jury on his behalf before Kelly took over his own representation. The trial court told Kelly that his attorney could help him by answering his questions, but that Kelly would be in control of his case. Kelly stated that he only needed help on "technical matters and courtroom procedure."

Kelly contends that the *Faretta* colloquy in the instant case was "deficient because there [was] no inquiry as to whether [Kelly had] a history of mental illness, [had] any legal education or knowledge of legal procedure, or [understood] the responsibilities and ramifications of self-representation." Contrary to Kelly's

8

argument, "the trial court does not have to ask any particular questions" for a waiver of counsel to be valid. *Brooks v. State*, 243 Ga. App. 246, 248 (1) (a) (532 SE2d 763) (2000). The record need only reflect that the defendant "was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." *Evans*, 285 Ga. at 69 (citation and punctuation omitted). The record as a whole shows that Kelly received sufficient information and guidance from the trial court regarding the dangers and disadvantages of self-representation and nevertheless made a knowing and intelligent waiver of his right to counsel. See *Renfro*, 348 Ga. App. at 617-618 (2).

Kelly also contends that his conviction should be reversed because the trial court did not "clearly rule on its findings as to whether [he] knowingly, voluntarily, and intelligently waived his right to counsel and understood the dangers of proceeding to trial without counsel." While it is preferable for a trial court to articulate a specific finding on the record that a defendant knowingly and intelligently waived his right to counsel, the failure to do so is not error when the record as a whole demonstrates that the waiver was knowing and intelligent. *Brooks*, 243 Ga. App. at 248 (1) (a). Thus, Kelly's contention with regard to the trial court's failure to "clearly rule on its findings" in this regard has no merit. See id.

9

2. Kelly also contends that the trial court erred by depriving him of his right to communicate with stand-by counsel. Kelly failed to preserve this issue for appellate review.

The trial court told Kelly prior to trial that if he represented himself, his attorney could remain as stand-by counsel to answer Kelly's questions. The trial court warned Kelly, however, that his attorney would not be able to write questions for Kelly or give him directions on the case. During trial, after Kelly indicated that he had completed his cross-examination of a witness, an off-the-record conversation occurred between Kelly and his stand-by counsel. The trial court then said, "I'm not allowing that. He's representing himself. That's what I said earlier. You can't tell him things to ask because he's chosen to represent himself." Kelly contends that this statement by the trial court "unfairly infringed upon [his] ability to have stand-by counsel assist" and "effectively deprived [him] of a 'fair chance to present his case[.]'" Pretermitting whether the trial court's statement was erroneous, Kelly failed to object to the statement and therefore waived appellate review of the issue.

> It is well settled in Georgia that a party may not fail to object to an erroneous ruling or statement of a trial court and then attack that ruling on appeal. A party's duty to object in these circumstances gives the trial court the opportunity to correct the alleged error, and avoids the

10

possibility that a party may intentionally fail to object to a ruling and take a chance of a favorable outcome at trial based on the knowledge he or she stands a chance of obtaining a reversal on appeal.

*Kelly v. State*, 344 Ga. App. 433, 438 (810 SE2d 197) (2018) (citation and punctuation omitted).

3. Kelly did not appear for the second day of trial. He argues that the trial court erred when it informed the jury that he would no longer be present for the trial. We disagree.

After discussing with counsel outside the presence of the jury what to do about Kelly's absence, the trial court informed the jury, "Well, this morning, the defendant has alerted his attorney that he's chosen not to be here, so he's no longer present, if you look out." Kelly contends that his absence from trial was "a procedural issue that should not have been presented to the jury in such an incendiary manner." According to Kelly, the statement conveyed the trial court's bias to the jury in violation of OCGA § 17-8-57.

OCGA § 17-8-57 provides

(a) (1) It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused.

11

(2) Any party who alleges a violation of paragraph (1) of this subsection shall make a timely objection and inform the court of the specific objection and the grounds for such objection, outside of the jury's hearing and presence. After such objection has been made, and if it is sustained, it shall be the duty of the court to give a curative instruction to the jury or declare a mistrial, if appropriate.

(b) Except as provided in subsection (c)[3] of this Code section, failure to make a timely objection to an alleged violation of paragraph (1) of subsection (a) of this Code section shall preclude appellate review, unless such violation constitutes plain error which affects substantive rights of the parties. Plain error may be considered on appeal even when a timely objection informing the court of the specific objection was not made, so long as such error affects substantive rights of the parties.

Kelly failed to object to the trial court's statement, so we review this enumeration for plain error, which requires that

[f]irst, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the

---

[3] OCGA § 17-8-57 (c) provides: "Should any judge express an opinion as to the guilt of the accused, the Supreme Court or Court of Appeals or the trial court in a motion for a new trial shall grant a new trial." Kelly does not contend that the trial court expressed to the jury an opinion as to his guilt. Therefore, OCGA § 17-8-57 (c) does not apply.

12

error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (citations, punctuation, and emphasis omitted). Kelly has failed to meet the first prong of the plain error standard because the challenged statement was not improper under OCGA § 17-8-57. In the challenged statement, the trial court did not express to the jury an opinion about whether a fact at issue in the case had been proved or whether Kelly was guilty. See *Howard v. State*, 298 Ga. App. 98, 99 (1) (679 SE2d 104) (2009) (court's explanation to the jury of why the defendant was not in the courtroom on the second day of trial was not an impermissible comment under OCGA § 17-8-57).

Kelly also argues that by informing the jury of his message to his attorney, the trial court violated his right to remain silent. However, by failing to object to the trial court's statement, Kelly waived appellate review of this issue. See *Kelly*, 344 Ga. App. at 438.

4. Kelly contends that the trial court erred by excluding an academic transcript showing that he had received electrical training. The trial court excluded the transcript as irrelevant, stating "I don't see the relevance of it at this time. If [Kelly] takes the stand and testifies, at that point in time it might become relevant." Kelly argues the evidence "was relevant because it provided a valid reason for the tools that were found on [him] and in the vehicle." The State contends that the "transcript alone, which showed courses taken a decade prior to the crime, did not become relevant unless someone could testify that [Kelly's] schooling remained pertinent to his life . . . and could explain his presence near the scene of the burglary alleged, or his possession of tools which were alleged to aid in commission of a crime." Pretermitting whether the trial court erred by excluding the transcript, Kelly has not demonstrated how his defense was prejudiced by its exclusion. See *Jackson v. State*, 306 Ga. 69, 80 (2) (c) (829 SE2d 142) (2019) ("[T]he test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict.") (citation and punctuation omitted); see also OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). "In determining whether the error was harmless, we review the record de novo and weigh the evidence

14

as we would expect reasonable jurors to have done so." *Kirby v. State*, 304 Ga. 472, 478 (3) (c) (819 SE2d 468) (2018) (citation and punctuation omitted).

The transcript, which lists courses taken in 2004 and 2005, at best indicates that Kelly received some amount of electrical training. No evidence in the record shows that Kelly was working as an electrician at the time of the burglary. The jury heard testimony that Kelly was found trying to hide in a back yard after fleeing from the police in a vehicle that was spotted near the burglary site around 3:30 a.m. In addition, the State presented evidence that crowbars, a sledgehammer, bolt cutters, and other tools had been found in the same vehicle, and that other occupants of the vehicle had participated in the burglary. The jury also heard testimony that Kelly was wearing dark clothing and had wire cutters and a large amount of cash in his possession when he was found. On these facts, we conclude that it is highly probable that any potential error in excluding the transcript did not contribute to the verdict. See *Jackson*, 306 Ga. at 81 (2) (c).

Kelly also argues that the trial court's ruling that it would permit the evidence to be admitted only if Kelly testified was inappropriate because it "attempted to coerce [Kelly] to waive his right to remain silent." Kelly has not met his burden of showing error. See generally *Tolbert v. Toole*, 296 Ga. 357, 363 (3) (767 SE2d 24)

(2014) ("It is [the appellant]'s burden, as the party challenging the ruling below, to affirmatively show error from the record on appeal.") The trial court made it clear that it excluded the academic transcript because it found that, standing alone, the transcript was not relevant. Kelly does not identify any evidence in the record showing that the trial court's ruling was a subterfuge to coerce him to testify. Furthermore, he cites no authority (other than U. S. Const. amend. V and Ga. Const. of 1983, Art. I, Sec. I, Par. XVI) to support his conclusory assertion that the trial court's ruling attempted to coerce him to waive his right to remain silent. Consequently, we discern no reversible error in this regard.

5. Kelly contends that the trial court violated his right to confront witnesses by interfering with his cross-examination of law enforcement officers. We disagree.

The Confrontation Clause does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish," and "[l]imitations on cross-examination are generally reasonable so long as the court does not cut off all inquiry on a subject that the defense is entitled to cross-examine on." *Shaw v. State*, 301 Ga. 14, 19 (2) (799 SE2d 186) (2017) (citations and punctuation omitted). "Like most questions about the admissibility of evidence, the scope of cross-examination is committed in the first instance to the sound discretion of the trial

16

court, and [an appellate court] review[s] a limitation of cross-examination only for an abuse of that discretion." *Lucas v. State*, 303 Ga. 134, 136-137 (2) (810 SE2d 491) (2018).

Kelly contends that the trial court "interrupted [his] questions, refused to allow questions, and reprimanded [him] and his counsel although no objections by the State were made." Kelly cites to two occasions during trial when the court took issue with his line of questioning. On the first occasion, Kelly's trial counsel questioned the detective as follows:

> Q: Do you think it would be relevant to have the information showing that Mr. Kelly's cell phone was in the area or not in the area?
> A: No. Not at the time.
> Q: Why not?
> A: He was in the, he was in the vehicle that was stopped leaving the area.

A few questions later, trial counsel asked the detective, "And do you think it would be relevant information if Mr. Kelly's cell phone that he's carrying came back as being triangulated in a different area?" At that point, the trial court excused the jury and inquired into the relevance of the question, given that Kelly was caught in the area of the burglary. Kelly's trial counsel explained that when Kelly had been arrested

for the Milano's Fine Jewelry burglary, the primary evidence was a triangulation of his cell phone.

The trial court ruled that the line of questioning regarding triangulation in this case was misleading and bordering on irrelevant. Under the circumstances of this case, where Kelly was found immediately after fleeing from police in a vehicle that was seen near the burglary site within minutes of the burglary, the trial court did not err by limiting the scope of cross-examination with respect to cell phone location evidence. See *Hill v. State*, 310 Ga. 180, 191 (7) (850 SE2d 110) (2020) ("[T]rial courts retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, . . . confusion of the issues . . . or interrogation that is repetitive or only marginally relevant.").

Kelly's only other claim of error in this regard is based on his questioning of the officer who investigated Kelly's participation in the burglary of Milano's Fine Jewelry. Kelly's trial counsel asked the officer several questions about the location of Kelly's cell phone at various times during that burglary. The trial court inquired about the relevance of the questions and excused the jury. Outside of the jury's presence, the court asked the witness whether he would have gone through the cell

18

phone records to investigate the burglary if the burglars had been caught at the scene, and the witness stated that he probably would not have. The trial court expressed its belief that the questions about cell phone location were irrelevant and a waste of time. Nevertheless, when the jury returned, the court allowed Kelly's trial counsel to continue his questions about the location of Kelly's cell phone in the Milano's Fine Jewelry case. We find no abuse of discretion in the trial court's limitation of Kelly's cross-examination. See *Lucas*, 303 Ga. at 136-137 (2).

6. Kelly contends that the trial court committed reversible error in allowing the State to present evidence of the Milano's burglary. We disagree.

Under OCGA § 24-4-404 (b) ("Rule 404 (b)"), "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith," but such other-act evidence is admissible for other purposes, including to prove, among other things, intent, knowledge, identity, and absence of mistake or accident. The admissibility of evidence offered under Rule 404 (b) is determined by a three-part test: (1) the evidence must be relevant to an issue in the case other than the defendant's character; (2) the probative value of the evidence must not be substantially outweighed by its undue prejudice under OCGA § 24-4-403; and (3) there must be sufficient proof for a jury to find by a

19

preponderance of the evidence that the defendant committed the other act. See *Bradshaw v. State*, 296 Ga. 650, 655-656 (3) (769 SE2d 892) (2015). We review the trial court's ruling admitting evidence under Rule 404 (b) for a clear abuse of discretion. See id. at 656 (3).

In this case, after a pretrial hearing, the trial court ruled that evidence of the prior burglary would be admissible at trial for the purposes of proving Kelly's intent, knowledge, and modus operandi. At trial, before the State presented evidence of the Milano's burglary, the trial court charged the jury that, "[i]n order to prove its case, the [S]tate must show intent and negate or disprove mistake or accident. To do so, the [S]tate is going to offer evidence of another crime allegedly committed by the accused. You are permitted to consider that evidence only insofar as it may relate to those issues and not for any other purposes." Later, in its final charge to the jury, the court charged the jury to consider the other-acts evidence only for the previously authorized purposes of intent, knowledge, and modus operandi.[4]

---

[4] Although Kelly argues that the inclusion of modus operandi and knowledge as relevant purposes for consideration in the final charge to jury "had the effect of confusing the jury as to the proper purpose for which the evidence should be considered[,]" he does not enumerate as error the trial court's instructions to the jury, and he cannot expand his enumeration of error through his brief. See *Scott v. State*, 302 Ga. App. 111, 112-113 (1) (b) (690 SE2d 242) (2010). Consequently, we will not consider the propriety of the trial court's instructions.

Pretermitting whether it was error to admit the evidence about the prior burglary, we conclude that any such error was harmless. In determining whether an evidentiary error was harmless, as discussed in Division 4, we consider "whether it is highly probable that the error did not contribute to the verdict." *Jackson*, 306 Ga. at 80 (2) (c) (citations and punctuation omitted); see also OCGA § 24-1-103 (a).

Here, the evidence showed that Kelly was found wearing dark clothing and trying to hide immediately after fleeing from the police in a vehicle that was seen near the site of the burglary. Other participants in the burglary were in the same vehicle with Kelly, and various tools were located in the vehicle. When he was found, Kelly had wire cutters and a large amount of cash in his possession. Given this evidence, any error in allowing the State to admit evidence of the Milano's burglary was harmless. See *Scott v. State*, 357 Ga. App. 289, 295 (1) (b) (850 SE2d 477) (2020) (admission of evidence of a prior crime was harmless error where evidence showed defendant was in the get-away vehicle).

7. Kelly contends that his trial counsel rendered ineffective assistance in several respects. Kelly's claim of ineffective assistance of counsel, which he raises for the first time on appeal, has not been preserved for our review.

A claim of ineffective assistance of trial counsel must be asserted "at the earliest practicable moment." *Glover v. State*, 266 Ga. 183, 184 (2) (465 SE2d 659) (1996) (punctuation and footnote omitted). "The earliest practicable moment" means before appeal if the opportunity to do so is available. Id. In this case, Kelly's trial counsel withdrew as counsel after trial and before sentencing. New counsel was appointed to represent Kelly before his sentencing hearing. At the sentencing hearing, the trial court informed Kelly, "if you want to bring up ineffectiveness of counsel, you may do so and nobody gets their feelings hurt, but you have to bring it up at its earliest time, which would probably be a motion for new trial[.]" Kelly's new counsel told the court that she had discussed that option with Kelly. However, Kelly's new counsel apparently did not file a motion for a new trial or seek an evidentiary hearing concerning claims of ineffective assistance of trial counsel. After Kelly's sentencing, his current appellate counsel filed a notice of appeal on his behalf. Because neither Kelly's post-conviction counsel nor his current appellate counsel filed a motion for new trial or otherwise demanded an evidentiary hearing on any claim of ineffective assistance of trial counsel, Kelly is procedurally barred from raising any claim that trial counsel performed deficiently, as that claim was not raised at the earliest practicable moment. Id. See also *Luke v. State*, 236 Ga. App. 543, 544 (3) (512 SE2d

39) (1999) ("[N]ew counsel appeared in time to file a timely notice of appeal, but did so without first filing a motion for new trial or otherwise demanding an evidentiary hearing on any claim of ineffective assistance of trial counsel. Consequently, this claim of ineffective assistance has been procedurally defaulted and presents nothing for review on appeal.") (citation omitted).

8. Kelly contends that the evidence presented at trial was insufficient for the jury to find him guilty of burglary or possession of tools for the commission of a crime. We disagree.

The standard of review regarding the sufficiency of the evidence is well-settled:

> When evaluating challenges to the sufficiency of the evidence, we view the evidence presented at trial in the light most favorable to the jury's verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes for which he was convicted. We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts, and we do not reweigh the evidence[.] Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

*Clark v. State*, 309 Ga. 473, 477 (847 SE2d 364) (2020) (citations and punctuation omitted).

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. "However, the circumstantial evidence need not exclude every *conceivable* inference or hypothesis — only those that are reasonable." *Wise v. State*, 325 Ga. App. 377, 381 (2) (752 SE2d 628) (2013) (citation and punctuation omitted; emphasis in original).

> Moreover, whether a hypothesis is reasonable and whether every other hypothesis except the guilt of the accused has been excluded are generally questions for the jury to decide. Because jurors are able to hear and observe the witnesses, and thus are better able to judge the reasonableness of a hypothesis raised by the evidence, this Court will not disturb their findings unless [they are] unsupportable as a matter of law.

Id. (citation and punctuation omitted).

"A person commits the offense of burglary in the second degree when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied, unoccupied, or vacant building[.]" OCGA § 16-7-1 (c). Any person "concerned in the commission of a crime" is a party to a crime and can

24

be convicted of it. OCGA § 16-2-20 (a). A person is "concerned in the commission of a crime" if, among other things, he "[d]irectly commits the crime" or "[i]ntentionally aids or abets in the commission of the crime." OCGA § 16-2-20 (b). While "[m]ere presence at the scene is not sufficient to convict one of being a party to a crime, . . . criminal intent may be inferred from conduct before, during, and after the commission of a crime." *Wise*, 325 Ga. App. at 380 (1).

Kelly argues that the evidence was insufficient for the jury to find him guilty of burglary because he "was merely found in the vehicle that fled from the officer" and "[t]here is no evidence that he entered the gas station or took any money or property." However, Kelly was not merely found in the vehicle that fled from the officer. He was found wearing dark clothing while hiding face down in bamboo in a back yard with a large amount of currency and wire cutters in his possession. Furthermore, the State did not have to prove that Kelly entered the gas station; it only had to prove that he was a party to the crime. See OCGA § 16-2-20 (a). A jury could reasonably infer that Kelly, who fled from the police in the same vehicle as other burglars, had participated in the burglary. It was up to the jury to decide whether the only reasonable explanation supported by the evidence was that Kelly had committed the burglary. See *Wise*, 325 Ga. App. at 381 (2). We conclude that the evidence

25

presented at trial, though circumstantial, was sufficient to allow the jury to find that every other hypothesis except Kelly's guilt had been excluded and to find him guilty beyond a reasonable doubt of burglary.

Kelly also argues that there was insufficient evidence for a jury to find him guilty of possession of tools for the commission of a crime. OCGA § 16-7-20 (a) provides: "A person commits the offense of possession of tools for the commission of crime when he has in his possession any tool, explosive, or other device commonly used in the commission of burglary, theft, or other crime with the intent to make use thereof in the commission of a crime." Kelly was charged with possessing "wire cutters, a sledge hammer, drills, saws, and bolt cutters, tools commonly used in the commission of burglary with the intent to make use of said tools in the commission of said crime[.]" Kelly contends that "the tools had other uses, were not commonly used in burglaries," and "did not have evidence of recent use, such as dust or debris that would be consistent with the damage done at the gas station." However, as a general rule, "whether a tool is commonly used in the commission of a crime is within the ken of the average juror" and "jurors are entitled to use their knowledge and experience to decide" the common use element of OCGA § 16-7-20 (a). *Kenemer v. State*, 329 Ga. App. 330, 333 (765 SE2d 21) (2014) (citation and punctuation

26

omitted). Here, the evidence was sufficient for the jury to find that the tools in question were "commonly" used in the commission of a crime. See *Kennon v. State*, 232 Ga. App. 494, 496 (3) (502 SE2d 330) (1998) (sledgehammer, ax, bolt cutters, crowbar, wire cutters, and gloves are commonly used in the commission of burglary, theft, or other crimes). Furthermore, evidence of recent use of the tools in a particular crime is not necessary to support a conviction under OCGA § 16-7-20 (a) because the plain language of the statute "requires only that the defendant possess the relevant tools with the intent to use them in the commission of a crime, not that the tools must have already been used to commit a particular crime." *Sutton v. State*, 338 Ga. App. 724, 727 (1) (791 SE2d 618) (2016) (citations, punctuation, and emphasis omitted). Therefore, this argument fails.

9. Finally, Kelly claims that the alleged cumulative effect of numerous errors committed during his trial must be assessed under *State v. Lane*, 308 Ga. 10, 15 (838 SE2d 808) (2020). "To establish cumulative error a defendant must show that (1) at least two errors were committed in the course of the trial; (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial." *Lane*, 308 Ga. at 21 (4) (citation and punctuation omitted). Here, we have assumed that the trial court erred in

27

excluding Kelly's academic transcript and allowing the State to admit evidence of the Milano's burglary. See Divisions 4 and 6. Having considered these errors along with the entire record, we cannot say that they so infected the jury's deliberation that they denied Kelly a fundamentally fair trial.

*Judgment affirmed. Doyle, P. J., and Reese, J., concur.*