**FOURTH DIVISION**
**RAY, MCMILLIAN**
**and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 15, 2016**

# In the Court of Appeals of Georgia

A15A1631. BARNES v. THE STATE.

McMILLIAN, Judge.

Anthony Barnes appeals the denial of his motion for new trial after a jury convicted him of statutory rape, enticing a child for indecent purposes, child molestation, and contributing to the delinquency of a minor.

Viewed in the light most favorable to the verdict,[1] the evidence shows that on the evening of September 10, 2012, the 13-year-old victim, V. K., argued with her mother. Later, V. K., who was still angry, wrote her mother a note, left the house, and ran to a friend's house. After visiting another friend's house, V. K. began to walk back home some time around midnight. On her way home, V. K. went to a gas station where she heard a man ask where she was going. When V. K. replied, "nowhere," the

---

[1] See, e.g., *Mickens v. State*, 277 Ga. 627, 627-28 (593 SE2d 350) (2004).

man invited her to go with him and she agreed. V. K. described this man as dark-skinned with facial hair and a hat, and she later picked a picture of Barnes from a photographic lineup as the man she met that night.

Barnes and V. K. got into a burgundy SUV with another, lighter-skinned man and drove to an apartment building where the men obtained some marijuana while V. K. waited in the car. Afterward, the three went to a hotel room where the men smoked marijuana and Barnes asked V. K. to perform a lap dance. Both men then engaged in sexual intercourse with V. K. The next morning, after making V. K. shower and flush her underwear down the toilet because they "[were] not going to jail," they dropped V. K. back at the gas station where they had picked her up. She walked home, crawled into the back seat of her mother's car, and went to sleep. V. K.'s mother discovered her there, and V. K. told her mother that she had had sex with two men. Her mother then called the police and took V. K. to the hospital.

Subsequently, V. K. told police what had happened and led them to the hotel room where Barnes and the other man had taken her. A check of the reservation records revealed that Barnes had rented the room from September 9-12, 2012, and the hotel clerk provided the police with a copy of the identification he used at the time

2

he checked in. The identification card contained Barnes's name, birth date, and address.[2]

On appeal, Barnes argues that the trial court erred in failing to charge the jury that they could not consider his choice not to testify in any way in reaching their verdict. Alternatively, he asserts that his trial counsel was ineffective in failing to object to the omission of this charge. Barnes further contends that the trial court erred in preventing his counsel from questioning a potential juror about the juror's interest in working in law enforcement.

1. Barnes first argues that the trial court committed reversible error in failing to give the jury the complete pattern jury charge he requested regarding his decision not to testify in his own defense at trial. We agree.

Prior to trial, Barnes's counsel submitted a written request for the pattern jury charge on a defendant's choice not to testify, by referencing the pattern charge section number, § 1.32.10, in accordance with the "Criminal Case Management Order" issued by the trial court. That charge reads:

---

[2] Although Barnes does not raise the sufficiency of the evidence on appeal, we find that the evidence at trial was sufficient to support his convictions beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

The defendant in a criminal case may take the stand and testify and be examined and cross-examined as any other witness. You should evaluate such testimony as you would that of any other witness. However, the defendant does not have to present any evidence nor testify. If the defendant chooses not to testify, you may not consider that in any way in making your decision.[3]

(Citations and punctuation omitted.) Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.32.10 (4th Ed.).[4] At trial, however, the trial court charged only the first three sentences of the pattern charge and failed to give the last sentence instructing the jurors that they may not consider Barnes's decision not to testify "in any way in making [their] decision." Id. Barnes's counsel failed to object to this omission of this language, explaining at the hearing on the motion for new trial that he "just missed it."

Because Barnes's counsel failed to object to the incomplete charge, we are precluded from appellate review of the charge unless the omission constitutes plain

---

[3] See OCGA § 24-5-506 (b) ("The failure of an accused to testify shall create no presumption against the accused. . . .").

[4] Moreover, we note that in discussing with Barnes his decision whether to testify in the case, the trial court asked him if he understood "that if you choose not to testify that I will instruct the jury that they cannot hold your silence against you in any way?"

4

error as set out by our Supreme Court in *State v. Kelly*, 290 Ga. 29, 31 (1) (718 SE2d 232) (2011). The Court explained that test as follows:

> First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation, punctuation, and emphasis omitted.) Id. at 33 (2) (a). See *United States v. Olano*, 507 U.S. 725 (113 SCt 1770, 123 LEd2d 508) (1993). In other words, "the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceeding." (Citation and punctuation omitted.) *Guajardo v. State*, 290 Ga. 172, 176 (4) (718 SE2d 292) (2011). "Satisfying all four prongs of this standard is difficult, as it should be." (Citation and punctuation omitted.) *Kelly*, 290 Ga. at 33 (2) (a).

5

Turning to the first prong of the *Kelly* test, the United States Supreme Court has held that "a state trial judge has the constitutional obligation, upon proper request, to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify" by instructing the jury to draw no adverse inference from the defendant's election not to testify. *Carter v. Kentucky*, 450 U.S. 288, 305 (III) (101 SCt 1112, 67 LE2d 241) (1981). As the Court explained, "[n]o judge can prevent jurors from speculating about why a defendant stands mute in the face of a criminal accusation, but a judge can, and must, if requested to do so, use the unique power of the jury instruction to reduce that speculation to a minimum." Id. at 303 (II) (B).

But even prior to the United States Supreme Court's holding in *Carter*, the Georgia Supreme Court held in *Clay v. State*, 236 Ga. 398, 399 (224 SE2d 14) (1976), that when a defendant makes a timely request for a charge that his failure to testify in his own defense shall not create a presumption against him, "it is error for the trial judge to fail to give it," and the Court found that such an error "requires a new trial." See *Murphy v. State*, 270 Ga. 880, 880 (515 SE2d 148) (1999); *Culbertson v. State*, 193 Ga. App. 9, 11 (6) (386 SE2d 894) (1989).

Thus, we find that the trial court erred in omitting the portion of the pattern jury charge instructing the jury not to consider his failure to testify "in any way." The

6

State argues that the omitted language does not constitute plain error because the trial court covered the no adverse inference language in its preliminary charge. We disagree based on our review of the record. Although the trial court charged the jury in its pretrial instructions that the defendant had the absolute right to remain silent and the jury was not permitted to draw any inference of guilt from his exercise of that right, those instructions did not specifically address the issue of Barnes's testimony at trial. The trial court never charged the jury that it could not consider his decision not to testify at trial in any way or that it could draw no inference from that decision during its deliberations.[5] "A jury might well think that a defendant's right not to testify means merely that he cannot be called as a witness, leaving it to draw such conclusions from his silence as it felt warranted. An instruction not to consider his failure to testify precisely forbids drawing inferences." *United States v. Brand*, 80 F3d 560, 567 (IV) (B) (1st Cir. 1996).

---

[5] Compare *Bigby v. State*, 146 Ga. App. 500, 501 (3) (246 SE2d 496) (1978) (no reversible error in failing to grant defenses's written request to give instruction in final charge that defendant's failure to testify in his own favor shall not create any presumption against him, where trial judge gave defense's "pre-evidentiary written request to charge the jury *on this subject* and simply refused to recharge the jury in his final instructions") (emphasis supplied).

Likewise, we find that Barnes has met the second prong of the plain error test. This error, even if unintentional, is clear and not subject to reasonable dispute under the authority of *Carter*, *Clay*, and *Murphy*.

Turning to the third prong, we must determine whether this error affected Barnes's substantial rights, which in the ordinary case requires Barnes to show that the error likely affected the outcome of the proceeding. See *Shaw v. State*, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013). In *Carter*, the Court eloquently explained that the privilege against compulsory self-incrimination

> reflects many of our fundamental values and most noble aspirations: our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt; our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play . . .; our distrust of self-deprecatory statements; and our realization that the privilege, while sometimes a shelter to the guilty, is often a protection to the innocent.

(Citation and punctuation omitted.) *Carter*, 450 U.S. at 299-300 (II) (B). Thus, a no adverse inference instruction is constitutionally required, upon request, because "when the jury is left to roam at large with only its untutored instincts to guide it," it "may well draw adverse inferences from a defendant's silence." Id. at 301. That is because "too many, even those who should be better advised, view this privilege as

8

a shelter for wrongdoers. They too readily assume that those who invoke it are guilty of crime." (Citation and punctuation omitted.) Id. at 302. Similarly, our Supreme Court has recognized that requiring a no adverse inference charge "enforces the substantial importance of a criminal defendant's Fifth Amendment privilege and recognizes the impossibility of determining post-trial what adverse inference of guilt the jury may have drawn from the defendant's silence." *Murphy*, 270 Ga. at 880. Accordingly, under the circumstances of the case and the recognized tendency of jurors to infer that a non-testifying defendant may be guilty of a crime, the error presented here must be considered to have affected Barnes's "substantial rights" such that the third prong of the *Kelly* test is met. See *Cheddersingh v. State*, 290 Ga. 680, 683 (724 SE2d 366) (2012) (verdict form that directed jury to find defendant not guilty beyond a reasonable doubt affected defendant's substantial rights).

As to the fourth prong of the *Kelly* test, an appellate court has the discretion to remedy the error upon a determination that "the error seriously affects the fairness, integrity, or public reputation of the proceedings below." *Kelly*, 290 Ga. at 33. We think that the error rises to that level here where the privilege against compulsory self-incrimination has a long and storied history in American and English criminal jurisprudence. See *Carter*, U.S. at 299, n.14. Moreover, our Supreme Court

9

recognized that a no adverse inference instruction was required upon proper request five years before the United States Supreme Court's opinion in *Carter*. *Clay*, 236 Ga. at 398-99. The failure to give the instruction subverts the privilege against compulsory self-incrimination and not only undermines the fairness of the proceeding, but public confidence in that process. Accordingly, Barnes must be awarded a new trial. See *Cheddersingh*, 290 Ga. at 686 (plain error required new trial).

2. Given our holding in Division 1 above, we need not address Barnes's remaining enumerations of error.

*Judgment reversed. Ray, J., concurs. Rickman, J., concurs specially*.

A15A1631. BARNES v. THE STATE.

RICKMAN, Judge, concurring specially.

Because the Supreme Court of Georgia's holding in *Murphy* mandates that the failure to include the charge at issue here is "reversible error per se," I am constrained to concur with the majority.

Notably, *Murphy* predates *Kelly*. But I cannot reconcile *Kelly's* requirement to assess whether this error "affected the outcome of the trial court proceedings," with the Court's declaration in *Murphy* that it is impossible to do so. See *Murphy*, 270 Ga. at 880 (recognizing "the impossibility of determining post-trial what adverse inference of guilt the jury may have drawn from the defendant's silence"). *Murphy* demands that we presume the trial court's failure to give this charge was harmful, precluding any consideration of the otherwise substantial and compelling evidence in this case, much of which was not necessary to and was not included in the majority opinion.