In the Supreme Court of Georgia


Decided: June 6, 2016


S16A0190. ANDERSON v. THE STATE.


BLACKWELL, Justice.

Darrell Anderson was tried by a Dougherty County jury and convicted of felony murder and the unlawful possession of a firearm during the commission of a felony in connection with the fatal shooting of Jack Camp. Anderson appeals, contending that the evidence is insufficient to sustain his convictions and that the trial court erred when it charged the jury about the unlawful possession of a firearm during the commission of a felony. We find no error and affirm.[1]

---

[1] Camp was killed on March 14, 2007. A Dougherty County grand jury indicted Anderson, Dontavius Wilson, and Christopher Ingram on April 28, 2010 and charged them with malice murder, two counts of felony murder (one predicated on the possession of cocaine with the intent to distribute and the other predicated on aggravated assault), conspiracy to commit murder, aggravated assault, and the unlawful possession of a firearm during the commission of a felony. The men were tried jointly, and their trial began on November 8, 2010. The jury returned its verdict four days later, finding Wilson guilty of all charges, and finding Anderson and Ingram guilty of all charges except malice murder. On December 13, 2010, Anderson was sentenced to imprisonment for life for felony murder predicated on the possession of cocaine with the intent to distribute and a consecutive term of imprisonment for five years for the unlawful possession of a firearm. The verdict as to

1. Viewed in the light most favorable to the verdict, the evidence shows that, around 1:00 on the morning of March 14, 2007, Camp was shot and killed while working as a security guard at the Regency Club Apartments in Albany. Just before he was shot, Camp called 911 to ask for assistance with some "subjects," and the dispatcher heard a male voice in the background say, "oh hell, he's calling the police."

When law enforcement arrived at the apartment complex, a resident who had been walking through the complex at the time that Camp was shot provided a statement that identified Anderson, Dontavius Wilson (who was Anderson's cousin), Christopher Ingram, Luke Sears, and Kentrell Barney. When investigators interviewed Anderson, Wilson, and Ingram, they gave almost identical statements, all purporting to know nothing about the killing. Anderson added that he had "never ever" been to the Regency Club Apartments. Sears initially denied knowledge of the killing as well, and he provided an alibi for

felony murder predicated on aggravated assault was vacated by operation of law, see Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the conspiracy to commit murder and aggravated assault merged with the murder for which Anderson was convicted and sentenced. Anderson timely filed a motion for new trial on December 29, 2010, and he amended it on March 13, 2013. The trial court denied his motion on June 8, 2015, and Anderson timely filed a notice of appeal on July 7, 2015. The case was docketed in this Court for the January 2016 term and submitted for decision on the briefs.

Anderson, Wilson, and Ingram. But after Sears was arrested for providing a false statement, he agreed to come clean.

Sears then gave a second statement to investigators, which was generally consistent with the testimony he provided at trial. Sears said that, at around 7:00 on the evening of March 13, he went to drink and smoke marijuana with Anderson, Wilson, Ingram, and Barney at the home of Wilson's girlfriend. At one point, Sears saw Ingram pull out a revolver, and he saw the other men "horsing around" with it. All five men then went to a trailer park, and they drank and smoked marijuana there until Wilson received a phone call. The men then went to the Regency Club Apartments in separate cars — with Sears and Barney riding with Wilson, and Ingram riding with Anderson — so that Anderson, Wilson, and Ingram could sell crack.

Sears testified that the men parked their cars by a ballfield near the apartment complex. After the other men walked away, Sears remained in Wilson's burgundy Impala and soon fell asleep. Sears claimed that he awoke to the sound of gunshots, and Wilson returned to the Impala and put down a revolver that looked like the one Sears had seen earlier that night. Sears said that — as the men started their separate cars — he jumped out of the Impala, saw

3

Camp's body, and ran through the ballfield and the campus of Dougherty High School. When he saw Wilson drive up, he got back into the Impala, and Wilson told him, "[y]ou ain't seen nothing," and "[y]ou don't know nothing."

According to Sears, Wilson drove him back to the home of Wilson's girlfriend. When Anderson and Ingram arrived soon thereafter, Wilson approached them and handed Ingram what Sears thought was the revolver. Sears testified that he then heard Anderson say, "I told the n****** the man was going to call the police, and we just went to dumping."[2] Sears testified that the men all went back to the trailer park, subsequently visited a Waffle House, and finally parted ways later in the morning.

On appeal, Anderson claims that his convictions cannot be sustained because the only evidence of his guilt came from Sears. Former OCGA § 24-4-8 provided that, in "felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient [to establish a fact]. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony

---

[2] Sears also testified that "dumping" was slang for shooting.

of a second witness, except in prosecutions for treason."[3] The evidence necessary to corroborate an accomplice's testimony under former OCGA § 24-4-8 "may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged," but it "must directly connect the defendant with the crime, or lead to the inference that he is guilty." McKibbins v. State, 293 Ga. 843, 846 (1) (750 SE2d 314) (2013) (citation omitted). Here, the trial court informed the jury about the requirements of former OCGA § 24-4-8, and the jury was properly instructed that it was for the jury to determine whether Sears was an accomplice. Even if the jury determined that Sears, in fact, was an accomplice, we find that Sears's testimony about Anderson's guilt was amply corroborated by other evidence.

Sears's testimony about Anderson's specific involvement in the crimes was corroborated by two jailhouse informants, both of whom knew Anderson before they became incarcerated. One of the informants said that Anderson admitted to him that Anderson and Wilson had gone to the Regency Club

---

[3] This case was tried before January 1, 2013 under the old Evidence Code. See Ga. L. 2011, p. 99, § 101. We note, however, that the provisions of former OCGA § 24-4-8 were carried forward into the new Evidence Code and now can be found at OCGA § 24-14-8. See Bradshaw v. State, 296 Ga. 650, 654 (2) (769 SE2d 892) (2015) ("we give the new accomplice provision the same meaning as the old one") (citations omitted).

Apartments, that Wilson got into a "confrontation" with Camp, and that Anderson drove off without Wilson. The second informant described a conversation he had with both Anderson and Wilson in which Anderson said that he and Wilson were going to "beat" the charges "because they ain't got nothing on us" and that Sears "is the only one telling." According to the informant, when Anderson said this, Wilson "hit his leg, like to shut up," and the conversation ended. Finally — and perhaps most importantly — this same informant described a second conversation in which Wilson complained that Sears was "telling everything" and that he was "going to try to get some of my people to go talk to [Sears] and see if he will change his statement." Wilson then admitted that he, Anderson, and Sears had been "drinking, popping pills, and smoking weed" when they decided to make a drug sale at the apartments by Dougherty High School. But "when they got there, something went wrong with the drug sale" and Wilson shot Camp.

Based on the totality of the evidence, Sears's testimony was sufficiently corroborated under former OCGA § 24-4-8. And in all, the evidence was sufficient to authorize a rational jury to find beyond a reasonable doubt that

Anderson was guilty of the crimes of which he was convicted.[4] See Jackson v. Virginia, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); Powell v. State, 291 Ga. 743, 744 (1) (733 SE2d 294) (2012) ("[a] person who does not directly commit a crime may be convicted upon proof that a crime was committed and that person was a party to it") (citations and punctuation omitted). See also OCGA § 16-2-20 (b) (defining parties to a crime).

2. Anderson also contends the trial court erred when it failed to instruct the jury that, in order to convict him of the unlawful possession of a firearm during the commission of a felony, it had to find beyond a reasonable doubt that he had a firearm "within arm's reach." See OCGA § 16-11-106 (b) ("Any person who shall have on or within arm's reach of his or her person a firearm . . . during the commission of . . . (1) Any crime against or involving the person of another . . . and which crime is a felony, commits a felony."). But as

---

[4] Anderson also argues on appeal that there was insufficient evidence to support his convictions for felony murder predicated on aggravated assault, conspiracy to commit murder, and aggravated assault. But Anderson was not convicted of any of these crimes. As described in note 1, supra, the felony murder predicated on aggravated assault was vacated by operation of law, and the conspiracy and aggravated assault merged with the murder for which Anderson was convicted and sentenced. As a result, Anderson's claims about the sufficiency of the evidence of these crimes are moot. See Mills v. State, 287 Ga. 828, 830 (2) (700 SE2d 544) (2010); Lupoe v. State, 284 Ga. 576, 577 (1), n. 2 (669 SE2d 133) (2008).

Anderson acknowledges, he did not object to the jury charge at trial. Accordingly, we review this claim only for plain error. See OCGA § 17-8-58 (b).

To show plain error, Anderson must establish not only that the jury instruction was erroneous, but also that "it was obviously so" and that "it likely affected the outcome of the proceedings." State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (citation omitted). Even assuming that it was obviously erroneous for the trial court to fail to remind the jury about the "within arm's reach" element when it described the offense of unlawful possession of a firearm during the commission of a felony, Anderson has not shown that such failure had any effect — much less a likely effect — on the outcome of his trial. The "within arm's reach" element was properly included in the unlawful possession count of the indictment, that indictment was read to the jury, the trial court charged the jury that the State had to prove every material allegation in the indictment beyond a reasonable doubt, and the trial court reminded the jury that it would have the indictment in the jury room "during your deliberations in order that you may examine the specific allegations against these defendants." The trial court charged the jury that possession of a firearm could be actual or

constructive, and it instructed that actual possession required "direct physical control" over the firearm and that constructive possession required "both the power and the intention . . . to exercise dominion and control either directly or through another person."

In any event, whether the firearm was "within arm's reach" was not disputed at trial, with the State even acknowledging in its closing argument that unlawful possession required the firearm to be "within . . . reach." Indeed, there could be no reasonable dispute that whoever used a gun to shoot Camp actually had a firearm within arm's reach at the time of the shooting. The only issue at trial was whether one of the defendants was the shooter and the others were parties to his crime. As a result, Anderson has not shown that the trial court's failure to remind the jury about the "within arm's reach" element of unlawful possession of a firearm had any effect on the outcome of his trial. See Howard v. State, 288 Ga. 741, 743 (2) (707 SE2d 80) (2011) (no plain error where trial court failed to instruct on elements of aggravated assault where undisputed evidence was that perpetrators intentionally fired weapons and defense was mistaken identity).

Judgment affirmed. All the Justices concur.