**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**September 30, 2020**

# In the Court of Appeals of Georgia

A20A0831. WILLIAMS v. THE STATE.

HODGES, Judge.

Following a jury trial, the Superior Court of Pickens County entered a judgment of conviction against Ulysses Williams for four counts of armed robbery (OCGA § 16-8-41), two counts each of theft by taking (OCGA § 16-8-2) and possession of tools for the commission of a crime (OCGA § 16-7-20), and one count each of kidnapping (OCGA § 16-5-40) and entering an automobile (OCGA § 16-8-18). Williams appeals from the trial court's denial of his motion for new trial, arguing that he received ineffective assistance of trial counsel and that the evidence was insufficient to support his convictions for one count of theft by taking, one count of possession of tools for the commission of a crime, and entering an automobile. Finding no error, we affirm.

Viewed in a light most favorable to the jury's verdict of guilt,[1] the evidence revealed that Williams and two others entered a Verizon store in Jasper, Pickens County, on October 3, 2015. The three men were wearing sunglasses and wigs, and one of them displayed what appeared to be a handgun. One of the assailants locked the door to the store, and the three robbers forced the two Verizon employees in the store to a back room, instructed the manager to open the safe containing the store's stock of mobile telephones, and then zip-tied the employees. After the assailants took a deposit bag, telephones, and other merchandise, they took one employee's car keys. Unable to drive that employee's manual transmission vehicle, the robbers quickly returned and took the other employee's keys to his 2007 Toyota Yaris. They again left the scene, but authorities were able to track their movements by a GPS system hidden within the stolen telephones. The robbers abandoned the Yaris and took another vehicle, but were apprehended shortly thereafter. Surveillance footage revealed that one of the robbers was wearing camouflage pants, and Williams was discovered wearing camouflage pants. During a recorded interview with law enforcement officers, Williams admitted that he participated in the crimes.

---

[1] See, e.g., *Issa v. State*, 340 Ga. App. 327 (796 SE2d 725) (2017).

A Pickens County grand jury indicted Williams for four counts of armed robbery, two counts each of aggravated assault, kidnapping, false imprisonment, possession of tools for the commission of a crime, and theft by taking, and one count of entering an automobile.[2] Following the dismissal of certain charges during trial, the jury found Williams guilty of each remaining charge.[3] The trial court denied Williams' motion for new trial,[4] and this appeal followed.

1. Williams first contends that he received ineffective assistance of trial counsel in view of counsel's failure to object to an FBI agent's testimony that he heard Williams "confess" to the armed robbery of the Verizon store during a recorded interview that had been played for the jury. We are not persuaded.

To demonstrate ineffective assistance of trial counsel, Williams "must show both that his counsel's performance was deficient and that the deficient performance

---

[2] During trial, the State moved, and Williams agreed, to dismiss by order of nolle prosequi the two aggravated assault counts, one count of kidnapping, and the two false imprisonment counts.

[3] The trial court severed Williams' trial from the trials of his co-defendants.

[4] Although it denied Williams' motion for new trial, the trial court merged certain of Williams' convictions. Relevant to this case, the trial court vacated Williams' conviction for theft by taking, noting that it "is necessarily included in Count Thirteen [entering an automobile]."

so prejudiced him that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different." (Citation and punctuation omitted.) *Ward v. State*, 353 Ga. App. 1, 5 (2) (836 SE2d 148) (2019). To that end, "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." (Citation and punctuation omitted.) *Walker v. State*, 349 Ga. App. 188, 193 (4) (825 SE2d 578) (2019); see also *Brown v. State*, 321 Ga. App. 765, 766-767 (1) (743 SE2d 452) (2013). Indeed, "[s]ubstantial latitude is given during judicial review of trial counsel's decisions regarding trial strategy." (Citation and punctuation omitted.) *Kay v. State*, 306 Ga. App. 666, 671 (5) (c) (703 SE2d 108) (2010). "The failure to object to seemingly objectionable testimony may be trial strategy, by avoiding an objection that would draw the jury's attention to the statement." (Citation and punctuation omitted.) Id.

Here, during the testimony of the FBI agent, the State introduced into evidence a recording of Williams' third interview.[5] Thereafter, at the conclusion of the State's direct examination of the agent, the following exchange transpired:

---

[5] Although Williams gave two prior recorded interviews, the recordings did not contain any sound due to a recording error. As a result, these interviews were not played for the jury.

4

Q: One last question. I know the audio — I don't know if it's the recording room at the sheriff's office or this courtroom or how we're having to do it, so it's not really clear. Did I hear in the video that Mr. Williams *confesses* to the armed robbery of Verizon on October 3, 2015?

A: Yes, sir, he did.

(Emphasis supplied.) Trial counsel did not object to the State's question. Immediately thereafter, the State completed its questioning of the agent, Williams and the State confirmed that neither had any additional questions for him, and the agent was excused. The trial court then excused the jury for a lunch break. After the lunch break, but before the jury returned, the trial court noted that the State's question called for a conclusion, that the question was "probably improper," that Williams' statement "might be an admission but it would not be a confession," and admonished the State "to be careful about asking those kinds of questions."[6]

During the hearing on Williams' motion for new trial, trial counsel acknowledged that he did not object to the State's question, but testified that

---

[6] During the trial court's admonition, it asked Williams' trial counsel why he did not object to the statement. Trial counsel replied that he did not object "because the video [of Williams' interview] had already been played. . . ."

Williams' statement had already been played for the jury and that he would not generally "draw attention to something that — or give something undue attention by drawing an objection to it if it is not something that is really damaging." Similarly, he testified that "sometimes drawing . . . further attention to it does more damage than just letting it pass by." Furthermore, he stated that, while he recognized the value of limiting instructions, he felt that such instructions could "belabor the point" and that "this was not a case where [he] thought [a limiting instruction] was warranted. . . ."[7] Trial counsel also specifically noted that he made a strategic decision not to object to the State's question.

Here, Williams argues that trial counsel should have objected to the FBI agent's testimony because the jurors should have decided whether Williams "admitted to participation with an affirmative defense or confessed to committing a crime"; instead, Williams asserts, the agent "made that determination for them, entering the domain of the jury, whose right and duty it is to [form] its own conclusions." However, in view of the foregoing, we conclude that Williams has failed to carry his

---

[7] The trial court agreed, indicating it was "not sure" that a corrective instruction "would have been a good idea based on the circumstances." Moreover, the trial court observed that it did not "think the jury knows the difference" between an admission and a confession and characterized it as a "difference without distinction for purposes of the jury. . . ."

burden to demonstrate deficient performance by his trial counsel. See *Brown*, 321 Ga. App. at 767 (1) (finding that defendant could not "overcome the strong presumption that his trial counsel's decision not to object was a matter of reasonable trial strategy"); *Kay*, 306 Ga. App. at 671 (5) (c); see also *Davis v. State*, 290 Ga. 584, 587 (2) (b) (723 SE2d 431) (2012) ("In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy.") (citation omitted). Accordingly, Williams has not shown that he received ineffective assistance of trial counsel. Therefore, this enumeration is unavailing.

2. Williams next argues that the evidence was insufficient to support three of his ten convictions: one count of theft by taking, one count of possession of tools for the commission of a crime, and entering an automobile.[8] Although we consider each argument in turn, we find that none are meritorious.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only

---

[8] Williams does not contest the sufficiency of the evidence for his remaining convictions, including four counts of armed robbery for which he was sentenced, as a recidivist, to four concurrent terms of life without parole.

determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LEd2d 560 (1979)). As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citation omitted.) *Best v. State*, No. A20A0418, 2020 Ga. App. LEXIS 400, at *5 - *6 (1) (Ga. App. June 26, 2020).

(a) *Count 11 - Possession of Tools for the Commission of a Crime*. Williams first contends that the evidence was insufficient to convict him of possession of tools for the commission of a crime because the State failed to present any evidence that wigs are "commonly used" in the commission of crimes. "A person commits the offense of possession of tools for the commission of crime when he has in his possession any tool . . . or other device commonly used in the commission of burglary, theft, or other crime with the intent to make use thereof in the commission of a crime." OCGA § 16-7-20. In this case, the State indicted Williams for possessing wigs, "commonly used in the commission of [crimes] with the intent to make use of said tool in the commission of said crimes. . . ." Evidence adduced at trial indicated that Williams wore a wig during the Verizon robbery and that the wig was recovered following his apprehension.

8

The import of Williams' argument is that some direct evidence, perhaps from an expert witness, must be introduced in *each* case to demonstrate the commonality with which a wig — or, for that matter, any other "tool" — is generally used during criminal activity. This is not so. To the contrary, "[i]n the vast majority of cases construing [OCGA § 16-7-20], whether a tool is commonly used in the commission of a crime is within the ken of the average juror." (Citation and punctuation omitted.) *Kenemer v. State*, 329 Ga. App. 330, 333 (765 SE2d 21) (2014). For example, relevant to this case, our law is replete with examples of wigs being used during the commission of various theft crimes, including armed robbery. See *Skipper v. State*, 314 Ga. App. 870, 870-871 (1) (726 SE2d 127) (2012) (defendant wore "a red and black wig" during armed robbery); *Williams v. State*, 295 Ga. App. 639, 640-641 (673 SE2d 30) (2009) (defendant wore a wig during armed robbery); *Yisrael v. State*, 294 Ga. App. 222, 223 (668 SE2d 849) (2008) (defendant wore "a blond wig" during armed robbery); *Williams v. State*, 253 Ga. App. 458, 459 (1) (559 SE2d 516) (2002) (defendant "wore a dreadlock wig" during armed robbery); see also *Kennon v. State*, 232 Ga. App. 494, 496 (3) (502 SE2d 330) (1998) (finding that "sledgehammer, ax, bolt cutters, crowbar, wire cutters, and the pair of gloves shown in evidence satisfy the first element as they are commonly used in the commission of . . . crimes").

9

Therefore, we conclude that "it was well within the jury's ability to determine . . . whether the [wigs] were commonly used in the commission of a crime, and whether [Williams] had the necessary intent to use [one] in that manner." (Punctuation omitted.) *Kenemer*, 329 Ga. App. at 334; see also *Sutton v. State*, 338 Ga. App. 724, 726 (1), n. 5 (791 SE2d 618) (2016) (concluding that "jurors were entitled to use their own knowledge and experience" to determine whether certain items, including a dark knit hat, could be considered tools for the commission of a crime); *Thompson v. State*, 237 Ga. App. 91, 92 (1) (514 SE2d 870) (1999) (finding that jury could conclude that items found in defendant's vehicle, including ski mask and gloves, were tools used in the commission of a crime). Accordingly, this argument fails.

(b) *Count 13 - Entering an Automobile*. Next, Williams asserts that there was insufficient evidence of his intent to commit a theft in order to convict him of entering an automobile. A person commits the crime of entering an automobile if he "enter[s] any automobile or other motor vehicle with the intent to commit a theft or a felony. . . ." OCGA § 16-8-18. Here, the State alleged that Williams unlawfully entered "a 2007 Toyota Yaris, an automobile, . . . with the intent to commit a theft." The evidence demonstrated that Williams and his confederates took the Yaris owner's keys in order to steal the Yaris as part of their effort to flee from the robbery. We find

10

no error. See *Williams v. State*, 255 Ga. App. 775, 776 (566 SE2d 477) (2002) (finding that, in merger issue, evidence that defendant "entered the auto and stole it . . . was enough to establish the offense of entering an auto"); cf. *Woods v. State*, 275 Ga. App. 340, 345 (3) (620 SE2d 609) (2005).

(c) *Count 15 - Theft by Taking*. Finally, Williams argues that the State failed to present sufficient evidence of the value of the 2007 Toyota Yaris to support his felony sentence for theft by taking. However, in its order denying Williams' motion for new trial, the trial court vacated Williams' conviction for Count 15 because it "is necessarily included in Count Thirteen [entering an automobile]." Accordingly, Williams' argument concerning the sufficiency of the evidence as to Count 15 is moot. See, e.g., *Gebhardt v. State*, 307 Ga. 587, 591 (2) (837 SE2d 318) (2019) (noting, in parenthetical, that "a defendant is not 'convicted' on counts that are vacated . . ., and challenges to the sufficiency of evidence to support those non-existent convictions are moot"); *Anderson v. State*, 299 Ga. 193, 196 (1), n. 4 (787 SE2d 202) (2016).

In sum, we conclude that Williams has not satisfied his burden to demonstrate ineffective assistance of trial counsel. We further conclude that the evidence was sufficient to convict Williams beyond a reasonable doubt of the two crimes properly

challenged in this appeal — Count 11 (possession of tools for the commission of a crime) and Count 13 (entering an automobile). Therefore, we affirm the trial court's order denying Williams' motion for new trial.

*Judgment affirmed. McFadden, C. J., and Doyle, P. J., concur.*