**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 31, 2024**

# In the Court of Appeals of Georgia

A24A1353. GUERRA v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Nicole Guerra on one count of battery—family violence-first offense. Guerra now appeals this conviction and the denial of her motion for new trial, challenging the sufficiency of the evidence and arguing the trial court erred by failing to instruct the jury on her decision not to testify in her own defense *and* in denying her claim that trial counsel rendered ineffective assistance. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on May 14, 2019, a deputy with the Catoosa County Sheriff's Office was dispatched

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018) (explaining the standard of review on the appeal of a criminal conviction).

to Guerra's residence at 179 Lindsey Drive in Ringgold based on reports of a domestic disturbance. Upon arriving at the home, the deputy encountered Guerra's 18-year-old son, Caleb, who had a red mark that appeared to be dried blood near his right eye. Caleb would not provide the deputy any details, but Guerra explained that the incident was the result of a dispute with her daughter, Carah, Caleb's twin sister. Specifically, Guerra stated that she confronted Carah when she was trying to enter the home to retrieve belongings after threatening to move out. An argument then ensued, and the two women began shoving each other. Caleb—who had been at the next door neighbor's house—came over to intervene, at which point Guerra pushed him in his face. Caleb's older brother, Garrett (who was also there), confirmed this version of the incident and stated that the red mark on Caleb's face appeared to have been caused by his glasses being pushed into his face.

Based on this information, the deputy arrested Guerra, and the State ultimately charged her, via accusation, with one count of battery (family violence), alleging that she punched Carah, and a second count of the same offense, alleging that she punched Caleb in the face. The case then proceeded to trial, during which the State presented the foregoing evidence. After the State rested its case, Guerra moved for a directed

verdict of acquittal on both charges. And finding the State presented no evidence that Guerra punched Carah, the trial court granted the motion as to the count alleging a battery against Carah but denied the motion as to the allegation involving Caleb.

Thereafter, Guerra presented her defense, in which her son Garrett testified as a witness to the incident. Neither Guerra nor Caleb testified; and after Guerra rested her case, the jury found her guilty on the charge of battery (family violence), alleging that she punched Caleb. Subsequently, Guerra obtained new counsel and filed a motion for new trial, arguing only general grounds. The trial court then held a hearing on the motion, during which Guerra also alleged that her trial counsel rendered ineffective assistance by failing to call Caleb as a witness. But at the conclusion of the hearing, the trial court denied Guerra's motion. This appeal follows.

1. Guerra first contends the evidence was insufficient to support her conviction on the charge of battery (family violence) as to Caleb. Specifically, she argues the State failed to prove Caleb was a member of her household, a fatal variance existed between the accusation and the actual evidence at trial, and there was no evidence Caleb was injured. We disagree.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[2] And in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[3] The jury's verdict will be upheld, then, so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4] Bearing these guiding principles in mind, we turn to Guerra's specific challenges to the sufficiency of the evidence supporting her conviction.

OCGA § 16-5-23.1 (a) provides that "[a] person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm

_____

[2] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[3] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (noting that the relevant question is, after viewing the evidence in the light most favorable to the prosecution, could any rational jury found the essential elements of the crime beyond a reasonable doubt).

[4] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

to another." Subsection (b) further provides that, "[a]s used in this Code section, the term 'visible bodily harm' means bodily harm capable of being perceived by a person other than the victim and may include, but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts." And relevant to this matter, under OCGA § 16-6-23.1 (f) (2), "[i]f the offense of battery is committed between household members, it shall constitute the offense of family violence battery . . . ." Finally, subsection (f) (1) explains that "'household member' means past or present spouses, persons who are parents of the same child, parents and children, stepparents and stepchildren, foster parents and foster children, or other persons living or formerly living in the same household."

In this case, Count 2 of the accusation charged Guerra with battery (family violence) by alleging that she "did intentionally cause visible bodily harm to the person of Caleb Boyd, said person being the child of said accused, by punching said victim about the face. . . ." And as discussed *supra*, the State presented evidence that when Caleb attempted to intervene in Guerra's confrontation with his twin sister, Guerra shoved him in the face, which resulted in his glasses scratching his face and leaving a mark near his right eye.

5

(a) Even so, Guerra argues the foregoing evidence was insufficient because the State failed to prove Caleb was a household member as required by OCGA § 16-6-23.1 (f) (2). But the deputy testified she was dispatched to respond to a dispute among family members and specifically recounted that Guerra's "son had a mark over his right eye . . . ." Moreover, Guerra's defense witness—her other son, Garrett—testified that the incident involved his sister, his brother, and his mom. Garrett also explained that he had recently moved out of Guerra's home and was the last of his siblings to do so, with the implication being that all of them had lived there in the past. So, Guerra's claim that the State failed to prove Caleb was a household member, as defined by the statute, is belied by the evidence.[5]

(b) Guerra next argues her conviction should be reversed because a fatal variance existed between the charge in the accusation and the evidence actually presented during her trial. This argument likewise lacks merit.

It is well established that "[a]verments in an indictment as to the specific manner in which a crime was committed are not mere surplusage and must be proved

---

[5] *See Ward v. State*, 372 Ga. App. 383, 387-88 (2) (902 SE2d 211) (2024) (holding that even contradictory testimony from victim that she and defendant were living or formerly living in same household was sufficient to support defendant's conviction of felony-level family violence battery).

as laid, or the failure to prove the same will amount to a fatal variance and a violation of the defendant's right to due process of law."[6] But importantly,

> the general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.[7]

Indeed, the courts of our state do not "employ an overly technical application of the fatal variance rule, focusing instead on materiality."[8]

Here, Guerra claims a fatal variance existed between the accusation, which alleged that she "punched" Caleb in the face and the evidence presented at trial that she only "pushed" him in the face. But setting aside whether the red mark near

---

[6] *Strapp v. State*, 326 Ga. App. 264, 265 (1) (b) (756 SE2d 333) (2014) (punctuation omitted); *accord Quiroz v. State*, 291 Ga. App. 423, 425 (1) (662 SE2d 235) (2008), *superseded by statute on other grounds as recognized in Redding v. State*, No. S24A0834, 2024 WL 4350898, at *5 n4 (2024).

[7] *Strapp*, 326 Ga. App. at 265 (1) (b) (punctuation omitted); *accord De Palma v. State*, 225 Ga. 465, 469-70 (3) (169 SE2d 801) (1969).

[8] *Delacruz v. State*, 280 Ga. 392, 396 (3) (627 SE2d 579) (2006) (punctuation omitted); *accord Penix v. State*, 367 Ga. App. 765, 767 (1) (888 SE2d 352) (2023).

Caleb's eye constituted at least circumstantial evidence that Guerra punched rather than pushed him, we do not agree this variance was fatal because the accusation, nonetheless, "sufficiently apprised [Guerra] of the charge against [her], and that portion of the [accusation] specifying the means by which [she] committed this violent act was 'mere surplusage.'"[9]

(c) Finally, Guerra argues the evidence she pushed Caleb amounted to nothing more than mere physical contact and did not result in a visible injury as required by the statute to support a conviction of family-violence battery. But this claim is also belied by the record and likewise lacking in merit. As discussed *supra*, the deputy who responded to the incident testified that Caleb had a red mark near his eye and what

[9] *Strapp*, 326 Ga. App. at 265-66 (1) (b) (punctuation omitted); *see Penix*, 367 Ga. App. at 767 (1) (a) (explaining in case in which defendant was convicted of battery, "acceptance of [defendant's] argument for a distinction between the use of his fists, which is not mentioned in the indictment, and using his hands to push the jailers would result in an improper and overly technical application of the fatal variance rule" (punctuation omitted)); *Fletcher v. State*, 326 Ga. App. 389, 393 (4) (b) (756 SE2d 625) (2014) (rejecting fatal-variance argument because no material difference in allegation of indictment charging the defendant with using his hands to choke the victim and the proof presented at trial showing that he used his arms to choke her); *Strapp*, 326 Ga. App. at 265-66 (1) (b) (holding that there was no fatal variance between the indictment, which alleged that defendant applied a chokehold with his arms, and the victim's account, which suggested that defendant used his legs to commit violent act required by riot in a penal institution statute because language sufficiently apprised defendant of charge against him).

appeared to be dried blood. In fact, the deputy further testified that she had no doubt Caleb had suffered an injury to his face. Even Caleb's brother, Garrett—who testified as a defense witness—conceded that Caleb had a red mark near his eye and surmised it was caused by Guerra pushing Caleb's glasses into his face. Given these circumstances, the evidence was sufficient to support Guerra's family-violence battery conviction.[10]

2. Guerra next contends the trial court plainly erred by failing to instruct the jury that the defendant does not have to testify in her own defense, and if the

---

[10] *See Moore v. State*, 356 Ga. App. 752, 754 (1) (b) (848 SE2d 910) (2020) (concluding nurse's testimony that there was visible bruising and redness to the defendant's wife's cheek and doctor's testimony that those visible injuries would be consistent with being struck by a hand was sufficient evidence to support defendant's conviction on family-violence battery); *Gilbert v. State*, 278 Ga. App. 765, 766 (629 SE2d 587) (2006) (holding that there was sufficient evidence to sustain defendant's family-violence battery conviction when officer testified the victim's face was red from the defendant's blow, thus establishing that victim's visible harm was capable of being perceived by a person other than the victim); *Babb v. State*, 252 Ga. App. 518, 518, 520 (5) (556 SE2d 562) (2001) (finding evidence was sufficient to support jury's verdict of family-violence battery, which required a showing of substantial physical harm or visible bodily harm, when victim's neighbor and friend both testified that the victim's face appeared red and puffy or swollen after defendant struck her in the face); *cf. Futch v. State*, 316 Ga. App. 376, 379-80 (1) (a) (730 SE2d 14) (2012) (holding victim's testimony that defendant put his hand on her neck, absent any visible sign of injury, was insufficient to support defendant's conviction of family-violence battery).

defendant chooses not to testify, the jury should not consider that in any way in reaching a verdict. We disagree.

The record does not indicate that either Guerra or the State submitted written requests for jury instructions. But after swearing in the jury, the trial court provided some preliminary instructions, including an explanation of the burden of proof, in which it explained that: "Ms. Guerra could sit there the entire time and not say the first word because she has a presumption of innocence and that presumption remains with her throughout the trial until the State proves her guilt beyond a reasonable doubt." The trial then proceeded, and at the close of evidence, the parties apparently engaged in a brief charge conference, which was not transcribed. Following closing arguments, the trial court charged the jury on the applicable law, including again explaining the burden of proof. But the court did not instruct the jury that Guerra was not obligated to testify and that such a decision could not be considered in any way in reaching a verdict. When the trial court concluded its instructions, neither the State nor Guerra objected.

Given these circumstances, our review of this claim of error is significantly constrained. Indeed, under OCGA § 17-8-58, "[a]ny party who objects to any portion

of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate."[11] The failure to do so precludes "appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects the substantial rights of the parties."[12] In such cases, the proper inquiry is whether the instruction was "erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings."[13] And because Guerra failed to object to the trial court's jury instructions, our review is limited to consideration in this regard.[14] Suffice

---

[11] OCGA § 17-8-58 (a).

[12] OCGA § 17-8-58 (b); *see Alvelo v. State*, 290 Ga. 609, 614 (5) (724 SE2d 377) (2012) (holding that OCGA § 17-8-58 (b) requires an appellate court to review for plain error an alleged jury-instruction error to which no objection was raised at trial); *Issa v. State*, 340 Ga. App. 327, 336 (4) (796 SE2d 725) (2017) (same).

[13] *Alvelo*, 290 Ga. at 615 (5) (punctuation omitted); *accord Issa*, 340 Ga. App. at 336 (4); *see Williams v. State*, 306 Ga. 717, 720 (2) (832 SE2d 805) (2019) ("When reviewing a jury instruction for plain error that has not been affirmatively waived, the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings." (punctuation omitted)).

[14] *See* OCGA § 17-8-58 (b); *see also Merritt v. State*, 292 Ga. 327, 330 (2) (737 SE2d 673) (2013) (noting that even an objection voiced at the charge conference does not preserve objections to the charges subsequently given and, thus, appellate review of such charges is limited to review for plain error).

it to say, satisfying the plain-error standard is "difficult, as it should be,"[15] and the burden of establishing plain error "falls squarely on the defendant."[16] Guerra has failed to satisfy that burden here.

Examining the relevant case authority, the Supreme Court of Georgia has held that "when a proper charge on a criminal defendant's election not to testify *is timely requested by the defendant*, it is error for the trial judge to fail to give it."[17] And such an error "requires a new trial."[18] Similarly, the Supreme Court of the United States has held that a state trial judge has "'the constitutional obligation, *upon proper request*, to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify' by instructing the jury to draw no adverse inference from the defendant's

---

[15] *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (punctuation omitted) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (II) (129 SCt 1423, 173 LE2d 266) (2009)).

[16] *State v. Crist*, 341 Ga. App. 411, 415 (801 SE2d 545) (2017); *see Anderson v. State*, 299 Ga. 193, 196 (2) (787 SE2d 202) (2016) ("To show plain error, [the defendant] must establish not only that the jury instruction was erroneous, but also that it was obviously so and that it likely affected the outcome of the proceedings." (punctuation omitted)).

[17] *Murphy v. State*, 270 Ga. 880, 880 (515 SE2d 148) (1999) (punctuation omitted) (emphasis added); *accord Clay v. State*, 236 Ga. 398, 399 (224 SE2d 14) (1976).

[18] *Murphy*, 270 Ga. at 880 (punctuation omitted); *accord Clay*, 236 Ga. at 399.

election not to testify."[19] As that Court explained, "[n]o judge can prevent jurors from speculating about why a defendant stands mute in the face of a criminal accusation, but a judge can, and must, if requested to do so, use the unique power of the jury instruction to reduce that speculation to a minimum."[20] And echoing this case authority, as well as our statutory authority,[21] the pattern jury instruction on this issue provides as follows:

> The defendant in a criminal case may take the stand and testify and be examined and cross-examined as any other witness. You should evaluate such testimony as you would that of any other witness. However, the defendant does not have to present any evidence nor testify. If the defendant chooses not to testify, you may not consider that in any way in making your decision.[22]

---

[19] *Barnes v. State*, 335 Ga. App. 709, 712 (1) (782 SE2d 811) (2016) (emphasis supplied ) (quoting *Carter v. Kentucky*, 450 U.S. 288, 305 (III) (101 SCt 1112, 67 LE2d 241) (1981)).

[20] *Id.* (quoting *Carter*, 450 U.S. at 303 (II) (B)).

[21] *See* OCGA § 24-5-506 (b) ("The failure of an accused to testify shall create no presumption against the accused . . . .").

[22] Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.32.10 (4th Ed.).

Significantly, in further fidelity to the case authority related to this jury charge, § 1.32.10 of the pattern instructions also includes a footnote immediately following its title ("Defendant's Choice Not to Testify"), which notes "*Not required unless requested.*"[23]

In this matter, it is undisputed that Guerra did not submit a written request for the trial court to provide a jury instruction on her right to eschew testifying and that such a decision should not factor in the jury's decision. Additionally, Guerra does not claim she made an oral request for such an instruction during the charge conference or at any other point during the trial. And in the absence of such a request, the trial court's failure to instruct the jury on this issue did not constitute error, much less plain error.[24] Accordingly, Guerra's contention lacks merit.

---

[23] *Id.* (emphasis in original).

[24] *See Bynum v. State*, 315 Ga. App. 392, 394-95 (1) (b) (726 SE2d 428) (2012) (holding that because jury instruction regarding defendant's decision not to testify was not required absent a request for such instruction, trial court did not err in failing to provide it *sua sponte*, and thus defendant's claim that trial counsel rendered ineffective assistance by not objecting to court's failure lacked merit); *cf. Murphy*, 270 Ga. at 880 (explaining that trial court's failure to give defendant's *requested charge* regarding a criminal defendant's election not to testify was reversible error *per se*); *Clay*, 236 Ga. at 399 (holding trial court's refusal to give *requested instruction* that defendant's failure to testify in his own favor was not to create a presumption against him was reversible error); *Barnes*, 335 Ga. App. at 712-13 (1) (holding trial court's omission of portion of

14

3. Guerra further maintains the trial court erred in denying her claim that trial counsel rendered ineffective assistance by failing to call Caleb as a defense witness. Yet again, we disagree.

In evaluating Guerra's claims of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[25] which requires him to show that his trial counsel's performance was "deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[26] Importantly, should a defendant "fail to meet his burden on one prong of this two-prong test, we need not review the other prong."[27] As a result, this burden, though not impossible to meet, is "a heavy

---

pattern charge on defendant's decision not to testify, which informed jury that it could not consider such decision "in any way" in making its determinations, was error, *when defendant made timely written request for pattern charge*).

[25] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[26] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[27] *McAllister*, 351 Ga. App. 76, 93 (6) (830 SE2d 443) (2019); *accord Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017); *Lawson v. State*, 365 Ga. App. 87, 95 (3) (877 SE2d 616) (2022).

one."[28] In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[29] Significantly, the reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and under the particular circumstances of the case[.]"[30] And decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if "they were so patently unreasonable that no competent attorney would have followed such a course."[31] Consequently, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[32]

---

[28] *Jones v. State*, 292 Ga. 593, 599 (7) (740 SE2d 147) (2013).

[29] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[30] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016); *accord Lawson*, 365 Ga. App. at 95 (3).

[31] *Lockhart*, 298 Ga. at 385 (2); *accord Lawson*, 365 Ga. App. at 95 (3).

[32] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014); *accord Howard v. State*, 340 Ga. App. 133, 139 (3) (796 SE2d 757) (2017); *see Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of

Although her motion for new trial only argued that the jury's verdict should be vacated on general grounds,[33] at the hearing on her motion for new trial, Guerra claimed her trial counsel rendered ineffective assistance by failing to call Caleb, the victim, as a defense witness. But as an initial matter (and quite importantly), Guerra's trial counsel did not testify during the hearing. And as a result, trial counsel's decisions are "presumed to be strategic, and [Guerra] must show that the presumed strategy was so unsound that no reasonable lawyer would have adopted it to show deficient performance."[34] Of course, this is "an unusually heavy burden to carry, and

---

ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

[33] *See* OCGA § 5-5-20 ("In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury."); OCGA § 5-5-21 ("The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding.").

[34] *Sutton v. State*, 338 Ga. App. 724, 732 (3) (791 SE2d 618) (2016) (punctuation omitted); *accord Butler v. State*, 292 Ga. 400, 405 (3) n.8 (738 SE2d 74) (2013).

when trial counsel does not testify, it is extremely difficult to overcome the presumption of reasonable professional assistance."[35]

That being said, in support of Guerra's argument, Caleb testified during the hearing and asserted that his mother never struck him and the red mark near his eye was caused by a tree branch scratching him while he was trail-running earlier on the day of the incident. He further testified that, although he was stationed in Norfolk, Virginia while serving in the Navy around the time of the trial, he informed Guerra's trial counsel that he wanted to testify in his mother's defense and provided counsel with his contact information, but trial counsel never contacted him.

But on cross examination, the State asked Caleb if he recalled receiving a subpoena to appear at Guerra's trial, and he responded that he did not. Caleb also acknowledged telling the State's prosecutor shortly after the incident that he did not want to be involved in testifying and, later, testified that he did not put in a request for leave so he could attend the trial. Additionally, Caleb testified that he provided an affidavit to the State's prosecutor a few weeks after the incident, in which he stated he did not want Guerra to be prosecuted and that she did not intentionally hurt him.

---

[35] *Sutton*, 338 Ga. App. at 732 (3) (punctuation omitted); *accord Butler*, 292 Ga. at 405 (3) n.8.

But in that same affidavit—in stark contrast to his testimony during the motion-for-new-trial hearing—Caleb averred that his "glasses cut his face when he was separating [his] mom and sister." Given these circumstances, Guerra's trial counsel may well have decided that Caleb's testimony would not have been credible. And the appellate courts have "repeatedly deemed reasonable a trial attorney's decision not to call witnesses based on credibility concerns."[36] Consequently, we cannot say trial counsel's decision to not call Caleb as a witness fell outside the wide range of reasonable professional assistance.[37] And accordingly, the trial court did not err in denying Guerra's claim of ineffective assistance of counsel.[38]

---

[36] *Stokes v. State*, 362 Ga. App. 223, 230 (2) (867 SE2d 834) (2022).

[37] *See Lockheart v. State*, 284 Ga. 78, 80 (3) (663 SE2d 213) (2008) (holding trial counsel made a strategic decision not to call a specific witness because she felt that the witness "may have lacked credibility"); *Stokes*, 362 Ga. App. at 230 (2) (concluding that although trial counsel did not testify to a strategic reason for not calling witness, a reasonable attorney could have chosen not to call witness because of concerns with his credibility).

[38] In the State's brief, it asserts Guerra also claimed her trial counsel rendered ineffective assistance by failing to request the jury charge on her right to not testify. But based on our review of Guerra's briefs, we disagree this contention was raised. And even if Guerra had raised this claim on appeal, we would deem it waived as she "did not raise this particular claim in [her] written motion for new trial or during argument at the new trial hearing, and the trial court did not rule on it." *Parker v. State*, 353 Ga. App. 493, 500 (6) (b) (838 SE2d 150) (2020); *see Allen v. State*, 317 Ga.

For all these reasons, we affirm Guerra's conviction and the denial of her motion for new trial.

*Judgment affirmed. Brown and Padgett, JJ., concur.*

---

1, 12 (4) (e) (890 SE2d 700) (2023) ("Ineffectiveness claims must be raised and pursued at the earliest practicable moment, which for a claim of ineffective assistance of trial counsel is at the motion for new trial stage if the defendant is no longer represented by the attorney who represented him at trial." (punctuation omitted)).